Cesar Omar SALAZAR, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–02–00045–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 27, 2002.

Lourdes Rodriguez, Houston, for appellant.

Donald W. Rogers, Jr., Asst. Dist. Atty., Houston, for State.

Panel consists of Justices TAFT, ALCALA and PRICE.*

## OPINION

TIM TAFT, Justice.

Appellant, Cesar Omar Salazar, was convicted by a jury of possession with intent to deliver at least 400 grams of cocaine. The jury assessed punishment at 35 years in prison and a fine of $15,000. We address (1) whether the evidence was insufficient to sustain the conviction for a knowing or intentional possession of cocaine, (2) whether appellant preserved any error in the trial court's denial of a requested continuance, and (3) whether there is a sufficient record to demonstrate that trial counsel was ineffective for failing to prepare for trial, failing to obtain a continuance, failing to object to extraneous offenses, failing to object to the omission of an instruction on a lesser included offense, and failing to object to an argument defining "beyond a reasonable doubt." We affirm.

## Facts

Houston Police Department officers were performing surveillance on Bob White Street of a house that they believed to be a "stash house" [1] for narcotics trafficking. During the surveillance, officers observed two individuals arrive and enter the house, remain inside for a few minutes, and leave carrying a shoe box. The box was placed in the back of a Ford Explorer, in which the men drove away. Officers followed the vehicle, hoping that a traffic violation would occur so that they would have a reason to stop the vehicle. When the driver failed to signal a turn, the officers made a traffic stop. During the stop, the officers learned that the driver of the vehicle had no identification and that the passenger had outstanding warrants for his arrest. The vehicle occupants were both arrested. During an inventory of the vehicle, officers recovered the shoe box containing two kilograms of cocaine. Neither of the men arrested pursuant to the traffic stop was appellant. The police then

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. A stash house is a place where large amounts of contraband are kept after they are brought to the United States.

sought a search warrant authorizing a search of the house on Bob White Street.

Meanwhile, two officers had remained on surveillance at the house while tactical officers followed the men in the vehicle. One of the two officers on surveillance observed appellant walking on Bob White Street toward the house. Appellant approached the house and entered through the front door, using a key. Fearing that appellant might destroy evidence, one of the officers on surveillance decided that the house should be secured[2] while awaiting the arrival of the search warrant. After other police officers arrived to assist, the two officers on surveillance decided to secure the house by seeking appellant's permission to enter the house. One pair of officers, including a uniformed officer, knocked on the front door, while others placed themselves out of view along the sides of the house. The pair of officers, who had approached the door and knocked, then heard footsteps behind the door and saw blinds to the side of the door move, indicating the presence of someone inside the house. No one answered the door, however. Moving to another vantage point, one officer saw appellant attempting to leave through a back door, wearing only his boxer shorts. The officers detained appellant and asked why he was at the house. Appellant gave the officers permission to enter the house while appellant dressed. The officers waited in the house until the warrant was obtained.

A search of the house conducted pursuant to the warrant revealed that a locked inner bedroom contained 68 kilograms of cocaine and 61 pounds of marihuana, along with scales, plastic packaging material, outer containers of marihuana, and outer wrappings of marihuana and kilograms of cocaine. The officers identified this room as a "packaging room." The key to the packaging room had been retrieved from one of the men arrested in the traffic stop, not from appellant. There was a huge hole in the wall between the garage and the living room that would facilitate the clandestine transfer of large amounts of contraband into the house.

Appellant identified his bedroom as the one next to the packaging room. Appellant's room contained a bed, papers and clothes that appellant claimed belonged to him, stereos, a cellular phone, and a television. Appellant's bedroom also contained a plastic bag with a powdery substance that tested negative for drugs and some "seed material" that the officers believed to be marihuana. Photograph albums, birth certificates, a false Social Security card, an identification card with appellant's picture and another address (not on Bob White Street), and $3278.00 in cash were also obtained from appellant's bedroom.

### Sufficiency of the Evidence

In his first point of error, appellant contends that the evidence was legally insufficient to sustain his conviction for a knowing or intentional possession of the amount of cocaine alleged. Although appellant addresses the sufficiency of the evidence proving appellant's possession of the two kilograms of cocaine recovered from the Ford Explorer, the State did not allege that appellant had any connection with the cocaine obtained from the vehicle,[3] but

2. In "securing" the house, the police officer on surveillance sought to obtain the cooperation of individuals in the house to allow officers to stay inside the house while awaiting the arrival of the search warrant. The officers on surveillance hoped to prevent the destruction of evidence by appellant or unknown individuals inside the house.

3. The two kilograms of cocaine recovered from the shoe box in the Explorer were not

only that appellant possessed the cocaine in the locked packaging room. Appellant contends that there is no evidence present in the record that links him to the possession of the cocaine in the packaging room.

■ The standard of review for a claim of legal insufficiency of the evidence was established by *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In *Jackson,* the Supreme Court held that a conviction will be upheld on appeal if, after a review of the record in the light most favorable to the prosecution, the court is convinced that a rational fact finder could readily have found the defendant guilty beyond a reasonable doubt. *Id.* 443 U.S. at 324, 99 S.Ct. at 2792. The appeals court does not retry the case, but simply determines whether there is evidence supporting the verdict. *See Clewis v. State,* 922 S.W.2d 126, 133 (Tex.Crim. App.1996).

Appellant bases his initial claim of insufficiency on a standard set forth in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Apprendi,* the United States Supreme Court reviewed a state statute that provided for enhanced punishment upon a finding by the trial court, by a preponderance of the evidence, that the crime was a hate crime. *Id.* 530 U.S. at 468–69, 120 S.Ct. at 2351. The Court stated:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in [*Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)]: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established beyond a reasonable doubt." 526 U.S. at 252–53, 119 S.Ct. 1215 (opinion of Stevens, J.); see also *id.* at 253, 119 S.Ct. 1215 (opinion of Scalia, J.).

*Apprendi,* 530 U.S. at 490, 120 S.Ct. at 2362–63. Appellant argues that *Apprendi* applies in that the punishment-increasing factor, the possession of more than 400 grams of cocaine, had to be submitted to the jury and proven beyond a reasonable doubt. Contrary to the situation in *Apprendi,* the jury in this case had to find beyond a reasonable doubt that appellant possessed more than 400 grams of cocaine (one aggravating factor), with intent to deliver (a second aggravating factor), before the jury could find appellant guilty. *Apprendi* concerns are thus not implicated here.

■ Appellant is correct in asserting that "[m]ere presence at the same place where cocaine was found is not enough" to obtain a conviction for possession under Texas law. "It has been consistently held in this state that possession means more than just being where the action is." *Wilkes v. State,* 572 S.W.2d 538, 540 (Tex. Crim.App.1978). Specifically, the State must prove (1) that the defendant exercised care, custody, control, or management over the contraband and (2) that the defendant knew that what was possessed was contraband. *Hyett v. State,* 58 S.W.3d 826, 830 (Tex.App.-Houston [14th Dist.] 2001, no pet. h.).

■ In this case, the jury was authorized to find appellant guilty under the law of parties. Thus, appellant could have been found guilty if the jury found that

even introduced into evidence at appellant's trial.

another person was guilty of the charged offense and that appellant, "acting with intent to promote or assist the commission of the offense," "solicit[ed], encourage[d], direct[ed], aid[ed], or attempt[ed] to aid the other person to commit the offense." *See* TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 1994). Here, the evidence produced the fair inference that the occupant of the Ford Explorer, who had the key to the packaging room, had obtained two kilograms of cocaine from the locked packaging room in the stash house. Therefore, it also produced the fair inference that this person knowingly had care, custody, control, or management over the cocaine found in the packaging room with intent to deliver that cocaine. The issue is whether appellant acted with intent to assist that person's commission of the offense by aiding that person's possession with intent to deliver the 68 kilograms of cocaine recovered in the packaging room.

The State showed that appellant was residing in the bedroom next to the one in which the cocaine was stored. Indeed, no evidence showed that anyone else lived in the house. The huge hole in the wall between the garage and the living room gives rise to an inference that appellant was aware that he was living in a stash house. Appellant did not answer the door when a uniformed officer knocked, even though appellant had peeked through the blinds and saw officers outside. Then, after officers had knocked at the front door, appellant hurriedly attempted to leave through the back door, clad only in boxer shorts. These actions reasonably imply guilty knowledge on the part of appellant. The most reasonable inference is that appellant had guilty knowledge of the cocaine and marihuana in the packaging room.

Under these facts, the jury could have found that appellant was residing at the stash house in order to safeguard the co-caine or to provide a facade that the stash house was being used as a legitimate residence. Viewing the facts proven by the State at trial in the light most favorable to the verdict, the jury could have found appellant guilty as a party to the offense of possession with intent to deliver the cocaine found in the house.

We overrule appellant's first point of error.

## Denial of Continuance

In his second point of error, appellant claims that the trial court erred by failing to grant a continuance requested by counsel. Appellant's appointed trial counsel stated in the motion for continuance that there was inadequate time to prepare for trial due to a language barrier between counsel and appellant. Further, the motion requested additional time due to pending civil litigation also being handled by appellant's counsel.

Because the record does not show that the motion for continuance was presented to the trial court or ruled on, any possible error is not preserved for review. *See Gomez v. State*, 171 Tex.Crim. 252, 346 S.W.2d 847, 848 (1961).

We overrule appellant's second point of error.

## Ineffective Assistance of Counsel

In his third point of error, appellant contends that trial counsel was ineffective for failing to prepare for trial, failing to secure a continuance, failing to object to extraneous offenses, failing to object to the omission of an instruction on a lesser included offense, and failing to object to an argument that diluted the concept of proof beyond a reasonable doubt.

The standard of review for an ineffective-assistance-of-counsel claim is set forth in *Strickland v. Washington*, 466 U.S. 668,

104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The appellant's claim has two components: (1) deficient performance and (2) prejudice. *Id.*, 466 U.S. at 687, 104 S.Ct. at 2064. In evaluating trial counsel's performance under the first prong of the *Strickland* test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*, 466 U.S. at 689, 104 S.Ct. at 2065. Rebutting this presumption necessitates a showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*, 466 U.S. at 687, 104 S.Ct. at 2064.

■ In this case, appellant did not develop trial counsel's reasons for not preparing and not objecting to various matters at, for example, a hearing on a motion for new trial. In the absence of any explanation for trial counsel's omissions, appellant has not overcome the presumption of effective assistance of counsel. *See Mallett v. State*, 65 S.W.3d 59, 68 (Tex.Crim. App.2001); *Gamble v. State*, 916 S.W.2d 92, 93 (Tex.App.-Houston [1st Dist.] 1996, no pet.).

We overrule appellant's third point of error.

### Conclusion

We affirm the judgment of the trial court.