NO. 07-08-0208-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 1, 2009

_____

CHARLES H. HARRISON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE COUNTY COURT AT LAW NO. 1 OF LUBBOCK COUNTY;

NO. 2006-497,399; HONORABLE L.B. "RUSTY" LADD, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.,

**OPINION**

Appellant, Charles H. Harrison, was convicted following a jury trial of driving while intoxicated. The court assessed sentence at 180 days confinement and a $2,000 fine–all of which was suspended in favor of twenty-four months of community supervision.

Appellant's single issue on appeal is whether the trial court erred in denying his motion for dismissal based upon a violation of his constitutional right to a speedy trial. We affirm.

**Background**

On November 27, 2005, Appellant was stopped by Sergeant Leland Hufstedler of the Lubbock Police Department, at approximately 1:30 a.m. for driving without headlights. When Sergeant Hufstedler spoke with Appellant, he detected the smell of alcoholic beverage emanating from his person. When asked, Appellant responded that he had been drinking earlier. Sergeant Hufstedler observed that Appellant was unsteady on his feet and leaned on his vehicle while walking on the sidewalk. He radioed Corporal Jimmy Altgelt of the LPD–DWI Unit to take over the investigation. After administering three standardized field sobriety tests, Corporal Altgelt determined Appellant was driving while intoxicated and placed him under arrest. Appellant later declined to provide a breath sample.

On January 11, 2006, the State filed an announcement indicating it was ready for trial. Although neither Appellant nor the State filed any motions for continuance, the trial court repeatedly reset the date for the pre-trial hearing until the hearing was ultimately held January 17, 2007. Thereafter, the trial court repeatedly reset the trial date until Appellant was tried March 10-11, 2008.

A week prior to trial, Appellant filed a motion to dismiss asserting that his constitutional right to a speedy trial had been violated. During the twenty-seven months

2

that had passed since his arrest, Appellant asserted that the State and the court had failed to take dispositive action and, as a result, relevant witnesses might not be available to aid his defense.

On March 10, 2008, the trial court held a hearing on Appellant's speedy-trial claim. Appellant testified that, because of the delay, he might not be able to contact a witness who had accompanied him throughout the night prior to his arrest and witnessed the traffic stop and events leading to his arrest. He testified that, during the delay, the witness had moved to Wyoming, and he last spoke with the witness six months prior to the filing of his motion. Although he had a telephone number for the witness, he was unsure whether it was a working number. The State presented no evidence. The trial court accepted fault for the delay noting that the delay was due to the court's caseload.[1] The trial court denied Appellant's motion and asked if both sides were ready for trial. Appellant re-urged his motion and the trial court denied the motion a second time. Thereafter, Appellant and the State indicated they were ready for trial.

After the State rested, Appellant again re-urged his speedy-trial claim. He asserted that, had there been no delay, he would have been able to call the witness identified in his motion to "testify about [Appellant's] whereabouts and activities the evening in question." Without stating how the witness's testimony would be beneficial to the defense, Appellant

---

[1]The trial court indicated that 200 to 250 misdemeanor cases were filed in the court each month and, in addition to pre-trial proceedings, the trial court conducted twenty-four to twenty-five jury trials each year.

indicated that he was prejudiced because his testimony would "counteract some of the evidence that's been introduced by the State."  The trial court again denied the motion.

Following the two day trial, the jury convicted Appellant of driving while intoxicated. Punishment was assessed by the court and this appeal followed.

## Discussion

Appellant asserts his right to a speedy trial was violated by the twenty-seven month delay.  He contends his defense was prejudiced because he lost contact with a "potential witness" whose testimony would have "counteract[ed] some of the evidence that [was] introduced by the State" at trial.

### I.    Standard of Review

In reviewing the trial court's ruling on Appellant's speedy-trial claim, we apply a bifurcated standard of review: an abuse of discretion standard for factual components and a *de novo* standard for legal components.  *Cantu v. State*, 253 S.W.3d 273, 282 (Tex.Crim.App. 2008); *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex.Crim.App. 2002). While our review necessarily involves factual and legal conclusions, how these two inter-relate "as a whole . . . is a purely legal question."  *Cantu*, 253 S.W.3d at 282 (quoting *Zamorano*, 84 S.W.3d at 648 n.19).  This is particularly so here where the facts are not disputed.

## II.     The Right to a Speedy Trial

The right to a speedy trial attaches once a person is arrested and charged.  *Cantu*, 253 S.W.3d at 280.  Constitutional speedy-trial claims are analyzed on an *ad hoc* basis by weighing and then balancing the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).  These four factors are: (1) length of delay, (2) reason for the delay, (3) assertion of the right, and (4) prejudice to the accused.  *Cantu*, 253 S.W.3d at 280.  We consider the four factors together along with the relevant circumstances noting that no one factor possesses "talismanic qualities."  *Zamorano*, 84 S.W.3d at 648.

While the State has the burden of justifying the length of the delay, the defendant has the burden of proving the assertion of the right and showing prejudice.  *See Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex.Crim.App. 1973).  The defendant's burden of proof on the latter two factors varies inversely with the State's degree of culpability for the delay, *i.e.,* the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial.  *Cantu*, 253 S.W.3d at 280-81 (citing *Robinson v. Whitley*, 2 F.3d 562, 570 (5th Cir. 1993)).

## A.    Length of Delay

The *Barker* test is triggered by a delay that is unreasonable enough to be presumptively prejudicial. *Doggett v. United States*, 505 U.S. 647, 652 n.1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). While there is no set time element that triggers a *Barker* analysis, the Court of Criminal Appeals has held that a delay of four months is insufficient while a seventeen-month delay is sufficient. *Cantu*, 253 S.W.3d at 281 (collected cases cited therein).

Here, twenty-seven months passed between Appellant's arrest and his assertion of his speedy-trial claim. We find this factor weighs in favor of Appellant. Since the triggering mechanism has been met, we consider the three remaining *Barker* factors.

## B.    Reason for the Delay

We next consider the reason(s) the State provided in an attempt to justify the delay. *Barker*, 407 U.S. at 531; *Zamorano*, 84 S.W.3d at 648-50. Sometimes, the government's justifications under this prong should be given greater or lesser weight, depending on the relative merit of the reasons which are given. *Barker*, 407 U.S. at 531. A "neutral" justification such as an overcrowded docket or mere negligence "should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.*

The State announced its readiness for trial in its filing on January 17, 2006, less than two months following Appellant's arrest. Neither party sought any continuances. Rather, the trial court assumed responsibility for the delay because it continually reset the pre-trial hearing and trial dates due to its crowded docket. Accordingly, the second *Barker* factor weighs only slightly in favor of a finding of a speedy trial violation.

### C. Timeliness of Asserted Speedy-Trial Claim

The third factor is concerned with the timeliness of a defendant's assertion of his right to a speedy trial. *See Barker*, 407 U.S. at 529, 531-32; *Zamorano*, 84 S.W.3d at 648, 651-52. Although the defendant has no duty to bring himself to trial, he does have a responsibility to assert his right to a speedy trial. *Cantu*, 253 S.W.3d at 282. Nonetheless, filing for a dismissal before seeking a speedy trial generally weakens a speedy-trial claim because it indicates a desire to have no trial instead of a speedy one. *Id.* at 283. When this occurs, the defendant should provide cogent reasons for this failure to seek a speedy trial before dismissal. *Id.*

In twenty-seven months between Appellant's arrest and trial, Appellant did not seek a speedy trial. Then, only a week before trial, he sought a dismissal based on a speedy trial violation without offering any explanation for his delay in asserting his rights. Accordingly, this factor weighs heavily against finding a speedy trial violation.

### D. Prejudice

Because pretrial delay is often both inevitable and wholly justifiable, *Cantu,* 253 S.W.3d at 285, the fourth Barker factor examines whether and to what extent the delay has prejudiced the defendant. *Barker*, 407 U.S. at 532. Prejudice "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. There are three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. *Id.*

Appellant did not assert that he suffered from "oppressive pretrial incarceration," anxiety, or concern. He asserts that, because of the delay, a potential witness was unavailable. He also indicated that the missing witness's testimony would "counteract some of the evidence" introduced by the State without indicating what the missing witness's testimony would show or what evidence introduced by the State would be counteracted.

To establish particularized prejudice based on an unavailable witness, a defendant must present proof both of the efforts made to locate the witness and that the witness would have benefitted his defense. *See Phipps v. State*, 630 S.W.2d 942, 947 (Tex.Crim.App. 1982); *Mabra v. State*, 997 S.W.2d 770, 780 (Tex.App.–Amarillo 1999, pet. ref'd). Appellant did neither. Thus, he failed to establish particularized prejudice at the

hearing before the trial court. This factor weighs against a finding of a speedy trial violation.

### E. Weighing of *Barker* Factors

In this case, the length of the delay weighs in favor of finding a violation of the right to a speedy trial and the reasons for the delay weigh only slightly in favor of finding a violation. These two factors are outweighed by the remaining factors. Appellant's failure to timely assert his right to a speedy trial and his choice of remedy (dismissal) indicates he acquiesced in the delay extenuating any presumptive prejudice. Moreover, Appellant's evidence of particularized prejudice, if any, is extremely marginal at best. Thus, the last and most important factor weighs against a finding of a speedy trial violation. Accordingly, based on the evidence presented in this case, we find the trial court did not err in its determination that Appellant's right to a speedy trial was not violated and overrule Appellant's sole issue.

### Conclusion

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Publish.

9