NO. 07-10-0051-CR

 IN THE COURT OF APPEALS

 FOR THE SEVENTH DISTRICT OF TEXAS

 AT AMARILLO

 PANEL E

 JULY 22, 2011

 JOSE LUIS RODRIGUEZ, APPELLANT

 v.

 THE STATE OF TEXAS, APPELLEE

 FROM THE 181ST DISTRICT COURT OF RANDALL COUNTY;

 NO. 20,070-B; HONORABLE JOHN B. BOARD, JUDGE

Before CAMPBELL and PIRTLE, JJ. and BOYD, S.J.[1]

 MEMORANDUM OPINION

 Appellant, Jose Luis Rodriguez, was convicted by a jury of possession with intent to deliver a
controlled substance, cocaine, in an amount of 400 grams or more[2] and assessed punishment of
eighty years confinement and a $250,000 fine. In three issues, Appellant asserts (1) the evidence
in support of his conviction is legally and (2) factually insufficient and (3) the trial court
abused its discretion in denying Appellant's motion to dismiss for lack of speedy trial. We affirm.

 Background

 On July 24, 2008, a complaint was filed alleging that on or about September 21, 2007,
Appellant intentionally and knowingly possessed, with intent to deliver, a controlled substance, to-
wit: cocaine, in an amount by aggregate weight, including adulterants or dilutants, of 400 grams or
more. Appellant was not arrested on the complaint at that time because he was already
incarcerated.[3] A Randall County Grand Jury subsequently returned an indictment on September 10,
2008, alleging the same offense, and a capias was issued but not executed. Pursuant to a bench
warrant issued November 21, 2008, Appellant was transferred from the Wheeler State Jail Unit in Hale
County, to the Randall County Jail on December 5, 2008; however, he was not arraigned on the
indictment until April 1, 2009. An attorney was appointed to represent him on May 22, 2009, and on
June 4, 2009, Appellant moved to dismiss the State's cause for lack of a speedy trial. The trial
court denied his motion on June 26, 2009, and a four day jury trial commenced on February 1, 2010.

 During the trial, the State adduced evidence that, on the morning of September 21, 2007, the
Narcotics Enforcement Team for the Randall County Sheriff's Office and SWAT Team for the Amarillo
Police Department executed a "no knock" search warrant at 6700 Hollywood Road, Amarillo, Texas
(house). While evidence recovered at the scene indicated that the house had been occupied by at
least three persons: Appellant, Sam Jalomo, Jr., and Angel Gutierrez; Jalomo was the only person
present when the warrant was executed. When the police entered, Jalomo was located in the southeast
bedroom.[4] As officers searched the house, they found evidence of a drug packaging and sales
operation in nearly every room. In the attic, officers found four kilograms of cocaine packaged as
compressed bricks in a blue gym bag. In the laundry room, they found a black duffle bag containing
marijuana residue, and, in the living room, a magazine for a semi-automatic rifle and duct tape.[5]
On the kitchen counter was a heat sealing machine with a roll of heat seal packages.[6] On a roll
of heat seal packages were the fingerprints of Appellant, Marybell Delarossa (Appellant's
girlfriend) and Kathy Okechukwu (Jalomo's girlfriend).

 In the southeast bedroom, or Jalomo's bedroom, officers found $1400 in cash, $930 in Jalomo's
shirt pocket and $470 on the counter in the bathroom. More than two grams of cocaine were scraped
from the bathroom counter and forty-one plastic Ziploc baggies individually filled with cocaine
totaling 1.15 kilograms were found in a shoebox underneath the lavatory. The officers also found a
black ceramic plate encrusted with cocaine containing a spoon with Appellant's and Jalomo's
fingerprints on the bottom of the plate.[7] There was also a plastic bag containing two boxes of
baking soda and three digital scales covered with a white residue.[8] Underneath Jalomo's bed was a
Norvinco SKS semi-automatic rifle with a magazine.[9] Officers also found a travel document
confirming a six-day trip to Las Vegas, Nevada, for Jalomo and Okechukwu, including hotel
accommodations costing $1,297.50.[10]

 In the northwest, or Gutierrez's bedroom, the officers found an address book, 9 millimeter
handgun ammunition, marijuana grinder, marijuana and two bundles of plastic Ziploc baggies.[11] The
officers also found airplane ticket stubs naming Appellant and his girlfriend, Delarossa. In the
bottom of Gutierrez's closet, the officers found a large black plastic garbage bag that contained a
second bag containing packaging materials used to transport drugs, i.e., five to ten used packages
for cocaine bricks made using cardboard, plastic with heat seals and tape. Some of the items had
white powder on them. Appellant's fingerprints were found on a baking soda container in the second
bag.

 In the northeast, or Appellant's, bedroom,[12] the officers found a bottle of inositol on the
bathroom counter.[13] In the medicine cabinet area, officers found a plastic container holding Q-
Tips, little plastic baggies and a set of digital scales. White powder was found in the bottom of
the container and on the digital scales. Appellant's fingerprints were on the bottom of the plastic
container. The officers also found court documents signed by Appellant, an envelope postmarked
August 13, 2007, addressed to Appellant in Canyon, Texas, and two airline baggage claim stubs naming
Appellant and Delarossa.

 At trial, Gutierrez testified that he, Appellant and Jalomo "go way back" and "grew up
together in Dumas," Texas. According to Gutierrez, Appellant "knew what was going -- he knew what
my homeboy [Jalomo], was doing," but "didn't have no part in it." Gutierrez testified that Jalomo
and Appellant had been living at the house for several months before he moved in. He further
testified that five bricks of cocaine were delivered the night before the search. He and Jalomo cut
one brick with baking soda on a plate in Jalomo's bedroom and measured out the cocaine into forty-
one plastic baggies that were subsequently stored in a shoebox underneath Jalomo's lavatory.[14] He
further testified Appellant did not know five kilograms of cocaine had been delivered to the house
the night before the search.

 After leaving the house to pick up his girlfriend the day of the search, Gutierrez observed
police officers descending on the house and immediately called Appellant and "told him that the cops
had hit the house that they were staying at." He did not call anyone else. Thereafter, he went to
an apartment where Appellant's girlfriend stayed and picked him up. They then attempted to hide
Jalomo's red BMW because they knew authorities would seize the vehicle after the search. Of the
three residents, Jalomo was the only one arrested that day. Gutierrez and Appellant were
subsequently arrested pursuant to warrants issued in conjunction with the filing of criminal
charges.[15]

 At the trial's conclusion, the jury convicted Appellant, sentenced him to eighty years
confinement and fined him $250,000. This appeal followed.

 Discussion

 In his first and second issues, Appellant contends the evidence is legally and factually
insufficient to sustain his conviction for the knowing or intentional possession of the amount of
cocaine alleged. He also asserts by a third issue that the trial court abused its discretion by
denying his motion to dismiss for lack of a speedy trial.

I. Sufficiency of the Evidence

 A. Standard of Review

 Since Appellant's brief was filed, the Texas Court of Criminal Appeals has held that the only
standard that a reviewing court should apply in determining whether the evidence is sufficient to
support each element of a criminal offense the State is required to prove beyond a reasonable doubt
is the standard set forth in Jackson v. Virginia, 443 U.S. 307, 33 S.Ct. 2781, 61 L.Ed.2d 560
(1979). See Brooks v. State, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010).[16] Under that standard, in
assessing the sufficiency of the evidence to support a criminal conviction, this Court considers all
the evidence in the light most favorable to the verdict and determines whether, based on that
evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. See Jackson, 443 U.S. at 319;
Brooks, 323 S.W.3d at 912.[17] This standard gives full play to the responsibility of the trier of
fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences
from basic facts to ultimate facts. Jackson, 443 U.S. at 319. See Hooper v. State, 214 S.W.3d 9,
15 (Tex.Crim.App. 2007).

 Further, the trier of fact is the sole judge of the weight of the evidence and credibility of
the witnesses; Tex. Code Crim. Proc. art. 38.04 (West 1979); Margraves v. State, 34 S.W.3d 912, 919
(Tex.Crim.App. 2000), and we may not re-evaluate the weight and credibility determinations made by
the fact-finder. Dewberry v. State, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999). Thus, we resolve any
inconsistencies in the evidence in favor of the verdict. Curry v. State, 30 S.W.3d 394, 406
(Tex.Crim.App. 2000).

 In addition, each fact need not point directly and independently to the guilt of the
appellant, as long as the cumulative effect of all the incriminating facts are sufficient to support
the conviction. Guevara v. State, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004) (citing Alexander v.
State, 740 S.W.2d 749, 758 (Tex.Crim.App. 1987)). Circumstantial evidence is as probative as direct
evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient
to establish guilt. Hooper, 214 S.W.3d at 13. Accordingly, we will affirm the judgment of the
trial court if the evidence is sufficient to prove Appellant's guilt under any theory authorized in
the jury charge. See Fuller v. State, 827 S.W.2d 919, 931 (Tex.Crim.App. 1992) cert. denied, 509
U.S. 922, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993) ("It is well-settled that when a general verdict is
returned and evidence is sufficient to support a finding of guilt under any of the paragraph
allegations submitted the verdict will be upheld.")[18]

 B. Law of the Parties -- Possession of a Controlled Substance

 To establish unlawful possession of a controlled substance, the State must prove (1) that the
defendant exercised care, custody, control, or management over the contraband and (2) that the
defendant knew that what was possessed was contraband. Salazar v. State, 95 S.W.3d 501, 504
(Tex.App.--Houston [1st Dist.] 2002, pet. ref'd). In this case, however, the jury was authorized to
find Appellant guilty under the law of parties.[19] Thus, to prove Appellant was criminally
responsible as a party, the State was required to prove that another person was guilty of the
charged offense; see Torres v. State, 233 S.W.3d 26, 30 n.2 (Tex.App.--Houston [1st Dist.] 2007, no
pet.), and Appellant, "acting with intent to promote or assist the commission of the offense,"
"solicited, encouraged, directed, aided, or attempted to aid the other person to commit the
offense." Tex. Penal Code Ann. § 7.02(a)(2) (West 2011). See Torres, 233 S.W.3d at 30 n.2.

 Gutierrez admitted while testifying at trial to knowingly having care, custody, control, or
management over the cocaine located in the house where Appellant was also staying. Furthermore,
Jalomo was in actual possession of the cocaine at the time the search warrant was executed.
Therefore, the issue is whether Appellant acted with intent to assist either Gutierrez's or Jalomo's
commission of the offense by aiding their possession, with intent to deliver, of the cocaine
recovered from the house. See Salazar, 95 S.W.3d at 505. In our analysis of this issue, we "look
at 'events occurring before, during and after the commission of the offense and may rely on actions
of the defendant which show an understanding and common design to do the prohibited act.'" Guevara,
152 S.W.3d at 49 (quoting Cordova v. State, 698 S.W.2d 107, 111 (Tex.Crim.App. 1987)).

 The State's evidence showed that Appellant was living in a house with persons he had known
since childhood and knew that Jalomo and Gutierrez were involved in the packaging and resale of
cocaine. Appellant and his girlfriend accompanied Jalomo and his girlfriend by airplane to Las
Vegas for a six-day trip despite the fact that neither he nor Jalomo was gainfully employed.
Throughout the house where Appellant had been living for months, there was clearly present empirical
evidence that its inhabitants had been engaging in the packaging and resale of cocaine on a major
scale. There were four kilograms of cocaine stored in the attic, a plastic garbage bag containing
five to ten used containers for bricks of cocaine, at least four sets of digital scales (all covered
with a white powder residue), forty-one plastic baggies containing an ounce of cocaine each for
resale, multiple boxes of plastic baggies used for resale of the cocaine and a semi-automatic rifle
with two magazines for protection.

 Specifically, in Appellant's room alone, there was a plastic container with Appellant's
fingerprint that stored plastic baggies, a set of digital scales with white powder residue, a bottle
containing a substance commonly used to cut cocaine, and an accumulation of white powder in the
bottom of the plastic container. In his room, Appellant also stored personal items, clothing,
toiletries, court documents, other legal documents and his airline baggage claim stub. In Jalomo's
room, a black ceramic plate used to cut cocaine had Appellant's and Jalomo's fingerprints on its
bottom and, in Gutierrez's room, Appellant's fingerprint was found on a box of baking soda in a
plastic bag that also contained five to ten used containers for cocaine bricks. Appellant's airline
ticket stubs were also found in Gutierrez's room. In the kitchen, Appellant's fingerprints were
identified on a roll of plastic used to heat seal money from the sale of cocaine for transportation
to Mexico. Further, when the police descended on the house to execute their search warrant,
Gutierrez immediately called to warn Appellant and subsequently met Appellant to secrete Jalomo's
BMW in an attempt to avoid its forfeiture. This evidence reasonably implies that Appellant was not
only knowledgeable of the drug operation at the house but participated in every facet of the
enterprise.

 Based on the totality of the evidence, a jury could have reasonably concluded that Appellant
was a participant in an ongoing criminal enterprise involving the possession of cocaine with intent
to deliver and he knew he was assisting the offense. Although Gutierrez testified that Appellant
did not participate in the purchase of any cocaine, the jury's verdict indicates they chose to
believe the State's evidence and the reasonable inferences that can be drawn from the entirety of
the State's case to conclude that Appellant took affirmative steps to assist, aid, and promote a
criminal enterprise involving Jalomo and Gutierrez.

 Further, although Appellant may not have been present when the five kilograms of cocaine were
delivered, "[t]he Penal Code does not require that the party actually participate in the commission
of the offense to be criminally responsible." Guevara, 152 S.W.3d at 51. Neither does the Penal
Code "require that a party to the crime be physically present at the commission of the offense."
Id. (citing Morrison v. State, 608 S.W.2d 233, 234 (Tex.Crim.App. 1980)). Therefore, after
examining all of the evidence in the case in a light most favorable to the verdict, we conclude that
a rational jury could have found all the elements of an aiding theory of party responsibility to be
proven beyond a reasonable doubt. Appellant's first two issues are overruled.

II. Speedy Trial

 Appellant next asserts his right to a speedy trial was violated by an eighteen month delay
between the time he was formally charged, July 24, 2008, and the date of his trial, February 1,
2010. He also asserts his defense was prejudiced because (1) he was without an attorney for more
than five months after he had been transferred from the Wheeler State Jail Unit in Hale County,
Texas, to the Randall County Jail in Amarillo, Texas, and (2) the delay in bringing the charges to
trial precluded him from securing a material witness.

 A. Standard of Review

 In reviewing the trial court's ruling on Appellant's motion to dismiss for lack of speedy
trial, we apply a bifurcated standard of review: an abuse of discretion standard for factual
components and a de novo standard for legal components. Harrison v. State, 282 S.W.3d 718, 720
(Tex.App.--Amarillo 2009, no pet.) (citing Cantu v. State, 253 S.W.3d 273, 282 (Tex.Crim.App.
2008)). While our review necessarily involves factual and legal conclusions, how these two
interrelate "as a whole . . . is a purely legal question." Id. (quoting Cantu, 253 S.W.3d at 282).
This is particularly so here where the facts are undisputed.

 B. Barker Analysis

 Constitutional speedy-trial claims are analyzed on an ad hoc basis by weighing and then
balancing the four factors set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101
(1972). These four factors are: (1) length of delay, (2) reason for delay, (3) assertion of the
right, and (4) prejudice to the accused. Cantu, 253 S.W.3d at 280. We consider the four factors
together along with the relevant circumstances noting that no one factor possesses "talismanic
qualities." Harrison, 282 S.W.3d at 721 (quoting Zamorano v. State, 84 S.W.3d 643, 648
(Tex.Crim.App. 2002)).

 While the State has the burden of justifying the length of the delay, the defendant has the
burden of proving (1) the assertion of his right to a speedy trial and (2) the showing of prejudice.
 Id. (citing Ex parte McKenzie, 491 S.W.2d 122, 123 (Tex.Crim.App. 1973)). The defendant's burden
of proof on the latter two factors varies inversely with the State's degree of culpability for the
delay, i.e., the greater the State's bad faith or official negligence and the longer its actions
delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his
right to a speedy trial. Id. (citing Cantu, 253 S.W.3d at 280-81).

 1. Length of Delay

 The Barker test is triggered by a delay that is unreasonable enough to be presumptively
prejudicial. Id. (citing Doggett v. United States, 505 U.S. 647, 652 n.1, 112 S.Ct. 2686, 120
L.Ed.2d 520 (1992)). While there is no set time element that triggers a Barker analysis, the Court
of Criminal Appeals has held that a delay of four months is insufficient while a seventeen-month
delay is sufficient. Cantu, 253 S.W.3d at 281 (collected cases cited therein).

 Here, more than twenty-eight months passed between the time of the offense and the time of
trial and more than eighteen months passed between the time formal charges were filed and the time
of trial. We find the length of delay factor weighs in favor of Appellant. Thus, we will consider
the three remaining Barker factors.

 2. Reason for the Delay

 At the hearing on Appellant's speedy trial motion, both the State and defense counsel
recognized that Appellant's case had simply "slipped through the cracks." A "neutral" justification
such as an overcrowded docket or mere negligence "should be weighted less heavily but nevertheless
should be considered since the ultimate responsibility for such circumstances must rest with the
government rather than with the defendant." Harrison, 282 S.W.3d at 721 (quoting Barker, 407 U.S.
at 531). See Murphy v. State, 280 S.W.3d 445, 453 (Tex.App.--Fort Worth 2009, pet. ref'd) (stating
lack of explanation for the delay weighs against the State but not greatly when there is no evidence
that the prosecutor purposefully engaged in dilatory tactics). Appellant offered no evidence that
the State's delay was purposeful. Accordingly, given that (1) Appellant was not arrested on the
date of the alleged offense, (2) he was already incarcerated for another offense at the time formal
charges were filed, (3) he was bench warranted to Randall County prior to completion of his state
jail sentence in order to stand trial, (4) he was accorded a jury trial within 10 months of being
arraigned, and (5) there was no evidence of a purposeful delay, we find the second Barker factor
weighs only slightly in favor of a finding of a speedy trial violation.

 3. Timeliness of Asserted Speedy Trial Claim

 The third factor is concerned with the timeliness of a defendant's assertion of his right to a
speedy trial. See Harrison, 282 S.W.3d at 721 (citing Barker, 407 U.S. at 529). Although the
defendant has no duty to bring himself to trial, he does have a responsibility to assert his right
to a speedy trial. Cantu, 253 S.W.3d at 282. Nonetheless, filing for a dismissal before seeking a
speedy trial generally weakens a speedy trial claim because it indicates a desire to have no trial
instead of a speedy one. Id. at 283. When this occurs, the defendant should provide cogent reasons
for this failure to seek speedy trial before dismissal. Id.

 When Appellant learned of the charges pending against him in Randall County in July 2008, he
was incarcerated at the Wheeler State Jail Unit. He subsequently applied to be transferred to the
custody of the Randall County Sheriff and, in December 2008, was transferred to the Randall County
Jail. Four months passed before he was arraigned and requested an attorney. An attorney was
appointed in May 2009, and Appellant filed his motion to dismiss for lack of a speedy trial in June
2009, approximately a month later.

 Given the delay between Appellant's transfer to Randall County and his subsequent arraignment
four months later, we cannot say that Appellant unreasonably delayed in asserting his right to a
speedy trial. That said, however, Appellant provides no explanation why he failed to seek a speedy
trial before dismissal. Accordingly, we find this factor weighs in favor of neither party.

 4. Prejudice

 Because pretrial delay is often both inevitable and wholly justifiable; Cantu, 253 S.W.3d at
385, the fourth Barker factor examines whether and to what extent the delay has prejudiced the
defendant. Barker, 407 U.S. at 532. Prejudice "should be addressed in the light of the interests
of the defendants which the speedy trial right was designed to protect." Id. There are three such
interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern
of the accused; and (iii) to limit the possibility that the defense will be impaired. Id.

 Appellant did not assert prejudice based upon oppressive pretrial incarceration or anxiety or
concern. Rather, he asserts that, because of the delay, a potential witness was unavailable. To
establish particularized prejudice based on an unavailable witness, a defendant must present proof
both of the efforts made to locate the witness and that the witness would have benefitted his
defense. Harrison, 282 S.W.3d at 721. Appellant did neither.[20] Neither did Appellant present
any evidence establishing he was prejudiced by being without an attorney during the four month
period between when he was transferred to the Randall County Jail and his subsequent arraignment.
Thus, he has failed to establish particularized prejudice due to any delay. This factor weighs
against a finding of a speedy trial violation.

 E. Weighing of Barker Factors

 While we are troubled by the ten month delay between the execution of the original search
warrant and the filing of formal charges, the eighteen month delay between the filing of charges and
the time of trial, as well as the four month delay between Appellant's transfer to custody in the
Randall County Jail and his subsequent arraignment, we are cognizant of the fact that he was already
incarcerated for a previous crime during much of this time and he was represented by counsel from
May 2008 until his trial. Further, prior to asserting his right to a speedy trial, he never
requested a trial setting, and at the hearing on his motion, he failed to establish any
particularized prejudice to his defense due to the delay, oppressive pretrial incarceration, anxiety
or concern, or any cogent reason for his failure to seek a speedy trial before dismissal.
Accordingly, having weighed the Barker factors against the record, we find the trial court did not
err in denying Appellant's motion to dismiss for a speedy trial violation.

 Conclusion

 The trial court's judgment is affirmed.

 Patrick A. Pirtle
 Justice

Do not publish.

-----------------------
[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't
Code Ann. § 75.002(a)(1) (West 2005).

[2]See Tex. Health & Safety Code Ann. § 481.112 (a), (f) (West 2010).

[3]On February 11, 2008, Appellant was arrested for alleged violations of his felony probation in an
unrelated cause. On March 26, 2008, his probation was revoked and he was sentenced to 18 months
State Jail in Cause No. 53,302-A, in the 47th District Court, Potter County, Texas.

[4]At trial, Gutierrez testified he lived at 6700 Hollywood Road at the time of the search and he
stayed in the northwest bedroom while Jalomo stayed in the southeast bedroom and Appellant stayed in
the northeast bedroom. Gutierrez also testified that although Jalomo paid the rent, that neither
Jalomo nor Appellant were employed.

[5]Douglas Herrington, APD SWAT team member, testified that the roll of duct tape in the living room
matched packaging materials used on the unopened cocaine bricks in the attic and packaging material
on opened cocaine bricks throughout the house.

[6]Gutierrez also testified that the heat sealing machine was used to package money obtained from
selling drugs prior to the money being delivered to Mexico.

[7]Gutierrez testified that he used his hands or a spoon to process or cut the cocaine in Jalomo's
bedroom using extenders such as baking soda on a plate similar to the plate encrusted with cocaine.

[8]Christopher Mayes, undercover narcotics officer, and Tommy Russell, APD narcotics agent,
testified that digital scales were commonly used by narcotics dealers to measure quantities of drugs
prior to resale.

[9]Gutierrez testified the rifle belonged to Jalomo and was kept for protection.

[10]Gutierrez testified that, shortly prior to the search, Appellant, Jalomo and their girlfriends
traveled together to Las Vegas, Nevada.

[11]Christopher Mayes, undercover narcotics officer, testified that Ziploc and sandwich baggies were
commonly found in houses utilized by narcotics dealers. He indicated the plastic baggies were
normally used to package drugs for resale.

[12]Gutierrez testified that Appellant "had his stuff there," kept his clothes in his bedroom and
slept there sometimes. He also testified that he, Jalomo and Appellant "pretty much kept [their]
stuff in [their] own room(s)."

[13]Brandon Conrad, manager of the Texas Department of Public Safety Crime Laboratory in Amarillo,
Texas, testified that cocaine was commonly cut or diluted using baking soda, inositol, benzocaine
and lidocaine.

[14]He testified that each baggie was intended to contain an ounce or 28 to 30 grams of cocaine
after being weighed on digital scales. He estimated one ounce of cocaine was worth $500 to $600 on
the street.

[15]Gutierrez ultimately pled guilty and was sentenced to 25 years confinement.

[16]Judge Hervey delivered the opinion in Brooks, joined by Judges Keller, Keasler and Cochran; and,
Judge Cochran delivered a concurring opinion, joined by Judge Womack. Although we are not bound by
a decision of four judges, Pearson v. State, 994 S.W.2d 176, 177 n.3 (Tex.Crim.App. 1999), we read
the combined opinions of Judges Hervey and Cochran in Brooks as abandoning factual sufficiency as an
evidentiary sufficiency standard of review distinct from legal sufficiency.

[17]The previously-applied factual sufficiency standard considers whether the evidence supporting
guilt, though legally sufficient, is so weak that the jury's verdict seems clearly wrong and
manifestly unjust, or evidence contrary to the verdict is such that the jury's verdict is against
the great weight and preponderance of the evidence. Grotti v. State, 273 S.W.3d 283 (Tex.Crim.App.
2008); Watson v. State, 204 S.W.3d 404, 414-15 (Tex.Crim.App. 2006). Under that standard, the
ultimate question is whether, considering all the evidence in a neutral light, the jury was
rationally justified in finding guilt beyond a reasonable doubt. Grotti, 273 S.W.3d at 283. Even
had we applied such a standard of review of the evidence, we could not sustain Appellant's
contention. From our review of the entire record, the finding of Appellant's guilt was neither
clearly wrong and manifestly unjust nor against the great weight and preponderance of the evidence.

[18]The jury in this case returned a general verdict finding Appellant guilty of unlawful possession
of a controlled substance with intent to deliver as alleged in the indictment.

[19]Paragraph 9 of the charge stated, in pertinent part, as follows:

 A person is criminally responsible as a party to an offense if the offense is committed by his
 own conduct, by the conduct of another for which he is criminally responsible, or by both.
 Each party to an offense may be charged with the commission of the offense.

 A person is criminally responsible for an offense committed by the conduct of another if,
 acting with intent to promote or assist the commission of the offense, he solicits, encourages,
 directs, aids, or attempts to aid the other person to commit the offense.

 * * *

 In determining whether the defendant participated in an offense as a party, the jury may
 examine the events before, during, and after commission of the offense and may rely on any
 actions by the defendant that show an understanding and common design to commit the offense.

[20]At trial, Appellant re-urged his motion to dismiss for lack of a speedy trial based on the
unavailability of two different witnesses but similarly failed to present any evidence of
particularized prejudice.