**Affirmed and Opinion filed July 30, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00090-CR

**ESTHER GARCIA ORTEGA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court at Law No. 4**
**Harris County, Texas**
**Trial Court Cause No. 1769477**

## O P I N I O N

Appellant Esther Ortega was charged with, and convicted of, possession of a gambling device. *See* Tex. Penal Code Ann. § 47.06 (West 2011). Appellant appeals her conviction, raising four issues. We conclude that appellant did not preserve her first issue, which challenges the trial court's jurisdiction on the ground that the jurat in the complaint was undated. In her third issue, appellant asserts that dismissal is required because her right to a speedy trial was violated as a result

of the State's failure to prosecute her in a timely manner. We overrule this issue because appellant has not made a prima facie showing that she was prejudiced by the delay of twenty-seven months.

Appellant urges in her fourth issue that she was entitled to testimonial immunity under Texas Penal Code section 47.08 because she was required to furnish self-incriminating testimony to one of the investigating sergeants on the scene. We overrule this issue because the trial court could reasonably have concluded that appellant was not required to furnish testimony to the sergeant but instead voluntarily provided the information.

Finally, appellant seeks a new trial in her second issue, arguing that the court denied her a fair trial for two reasons. Regarding appellant's complaint that the trial court refused to enforce her subpoena for the motherboards from seized gambling devices, we hold the court did not abuse its discretion given that the motherboards had been auctioned off or destroyed. As to appellant's contention that the trial court violated her right to compulsory process when it did not allow her to question a bank teller about seized funds, we hold that she failed to preserve this complaint for appellate review. We therefore affirm the trial court's judgment.

## BACKGROUND

From October 22 to November 9, 2010, the Harris County Sheriff's Department conducted an undercover investigation of the "Treasure Island Arcade." As part of the investigation, an undercover deputy, Terrence Burks, visited the arcade on three different occasions and gambled on several video gaming devices, commonly known as "eight-liners." Deputy Burks determined the eight-liners were illegal because they paid out more than five dollars, or more than ten times the value of the original wager. During one of his visits to the Treasure Island Arcade, Deputy Burks placed a 40-cent wager and won $108.80. Appellant

2

was working as a floor attendant at the arcade and paid Deputy Burks his winnings in cash.

As a result of Deputy Burks's investigation, a search warrant was obtained and executed on November 9, 2010. Appellant was working her assigned shift as a floor room attendant when the search warrant was executed. During the search, deputies seized approximately seventy gambling devices and the money found inside the arcade, including the money inside the eight-liners. After the warrant was executed and the premises were secured, Sergeant Touchasee Kributr interviewed appellant inside one of the arcade's offices. Appellant was not read her *Miranda* warnings before or during the interview, a recording of which was admitted into evidence.[1] Sergeant Kributr and appellant each testified that Kributr advised appellant she was not under arrest and was free to leave at any time. Kributr asked appellant if she would voluntarily agree to talk with him about the arcade's operations. Appellant told Kributr that her duties were to give change to the customers, pay out cash, and keep the arcade's refrigerator clean and loaded with snacks. Furthermore, appellant admitted that she was aware gambling was illegal in Texas and that Treasure Island Arcade was involved in illegal gambling.

Appellant was charged in February 2011 with possession of a gambling device. Appellant filed a motion to dismiss the case based on a defective complaint and invalid information, and the trial court granted the motion on July 11, 2011. The State then refiled the complaint and information against appellant on July 15, 2011. The State, however, failed to arrest appellant for nearly two years. As a result, appellant was unaware that a warrant had been issued for her arrest.

In July 2013, appellant finally became aware of the outstanding warrant

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

against her and surrendered to police. Appellant was tried and convicted of possession of a gambling device. She was sentenced to serve two days' imprisonment in the county jail and fined $700. Appellant timely filed this appeal.

ANALYSIS

**I.      Appellant waived any error concerning the trial court's jurisdiction by failing to object to the undated jurat in the complaint.**

In her first issue, appellant argues that the trial court never had jurisdiction because the complaint lacked a date in the jurat, rendering the charging instrument invalid. For misdemeanor offenses, a prosecutor "shall forthwith prepare an information based upon such complaint and file the same in the court having jurisdiction." Tex. Code Crim. Proc. Ann. art. 2.05 (West 2005). Appellant contends in her first issue that a complaint lacking a date in the jurat is fundamentally defective, citing *Shackelford v. State*, 516 S.W.2d 180 (Tex. Crim. App. 1974). *Shackelford* held that because "there can be no valid information in the absence of a valid complaint, a complaint without a proper jurat will not support an information." *Id*.

We hold that appellant failed to preserve this challenge in the trial court. If a "defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity, and he may not raise the objection on appeal or in any other post-conviction proceeding." *Ramirez v. State*, 105 S.W.3d 628, 630 (Tex. Crim. App. 2003). Appellant does not point out where in the record she timely objected to the alleged defect, and our own independent review of the record failed to locate an objection. Because appellant failed to object to the allegedly defective complaint on which the information was based, we overrule appellant's first issue.

4

## II.     Appellant's right to a speedy trial was not violated.

In her third issue, appellant argues she is entitled to dismissal because her right to a speedy trial was violated as a result of a twenty-seven-month delay between the date she was formally charged with possession of a gambling device and the date of her motion seeking dismissal on speedy-trial grounds.

### A.     Standard of review and applicable law

An accused is guaranteed the right to a speedy trial under both the United States and Texas Constitutions.  U.S. Const. amend. VI; Tex. Const. art. I, § 10. Texas courts apply the same standard to enforce the state constitutional right to a speedy trial as federal courts use to enforce the Sixth Amendment right to a speedy trial.  *Harris v. State,* 827 S.W.2d 949, 956 (Tex. Crim. App.  1992).  We therefore analyze together appellant's claims that these rights were violated.

The right to a speedy trial attaches once a person is either arrested or charged with an offense.  *Cantu v. State,* 253 S.W.3d 273, 280 (Tex. Crim. App. 2008).  Courts analyze speedy trial claims on a case-by-case basis by balancing the following factors: (1) length of the delay; (2) the reason for the delay; (3) the defendant's assertion of her right; and (4) the prejudice inflicted on the defendant by the delay.  *Barker v. Wingo,* 407 U.S. 514, 530 (1972).  No single *Barker* factor is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial."  *Id*. at 533.  Instead, the factors must be examined together, along with any other relevant circumstances.  *Id.*

In order to trigger a speedy-trial violation analysis, "an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay."  *Doggett v. United States,* 505 U.S. 647, 651–52 (1992).  Once the first *Barker* factor is satisfied, an analysis of the remaining factors is triggered.  *Cantu,* 253 S.W.3d at 281.  The State must meet

its burden of justifying the length of delay, while the defendant must satisfy her burden of proving the assertion of the right and showing that she was prejudiced as a result of the delay. *Id*. at 280. "The defendant's burden of proof varies inversely to the State's degree of culpability for the delay." *State v. Wei*, 447 S.W.3d 549, 554 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). In other words, "the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Cantu*, 253 S.W.3d at 280–81.

We apply a bifurcated standard of review when analyzing a trial court's ruling on a speedy trial claim. *Id*. at 282. Legal components are evaluated de novo, while the factual components are evaluated for an abuse of discretion. *Id*. Review of the individual *Barker* factors necessarily involves factual determinations and legal conclusions, but the balancing test as a whole is "a purely legal question." *Id*. With respect to the trial court's resolution of factual issues, we view all of the evidence in the light most favorable to the trial court's ruling. *Id*. Because the trial court denied appellant's motion on the record without making findings, "we presume that the trial judge resolved any disputed fact issues in the State's favor, and we defer to the implied findings of fact that the record supports." *Id*. There are no disputed fact issues in this case, however, because neither party offered any evidence in connection with the speedy trial issue. In their arguments on this issue at the pretrial hearing, the attorneys referred to documents in the trial court record to establish the relevant dates.

### B. Analysis of the *Barker* factors

#### 1. *The delay triggers a speedy-trial analysis.*

The first *Barker* factor, the length of the delay, is measured from the time the defendant is arrested or formally accused until the trial or the defendant's

demand for a speedy trial occurs. *United States v. Marion*, 404 U.S. 307, 313 (1971); *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). Here, appellant was formally charged on July 15, 2011 and filed her motion to quash or dismiss alleging a speedy-trial violation on October 21, 2013, an interval of over twenty-seven months. The State concedes this delay is sufficient to trigger a speedy-trial analysis. We agree. *See Harris*, 827 S.W.2d at 956 (noting that delay of eight months or longer is presumptively unreasonable and triggers speedy-trial analysis).

### 2. The reason for the delay was not explained.

The burden of justifying the delay is on the State. *Cantu,* 253 S.W.3d at 280. In evaluating the State's reason for the delay, we assign different weights for different reasons. *Barker,* 407 U.S. at 531. For instance, a deliberate or intentional prosecutorial delay will weigh heavily against the State. *Id*. A more neutral reason, such as negligence, will weigh less heavily against the State. *Id*. A valid justification for delay should not weigh against the State at all. *Id*. In the absence of an assigned reason for the delay by the State, we may presume neither a deliberate attempt to prejudice the defense nor a valid reason for the delay. *Dragoo v. State,* 96 S.W.3d 308, 314 (Tex. Crim. App. 2003).

As noted above, the length of delay was twenty-seven months. The record reflects that the State failed to notify appellant of the refiled charges against her or execute the arrest warrant for two years of that period. In the trial court, the State did not offer a specific reason for the delay. This factor therefore weighs in favor of finding a violation of the speedy trial right, although not heavily because the delay was not intentional or deliberate. *Dragoo*, 96 S.W.3d at 314; *Wei*, 447 S.W.3d at 555.

7

### 3. Appellant moved for dismissal rather than a speedy trial after learning of the charges.

The defendant has the sole responsibility of asserting the right to a speedy trial. *Barker,* 407 U.S. at 531. The failure to assert the right diligently makes it difficult for a defendant to show she was denied a speedy trial. *Id*. at 532. "Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one. If a defendant fails to first seek a speedy trial before seeking dismissal of the charges, he should provide cogent reasons for this failure." *Cantu*, 253 S.W.3d at 283. The failure to request a speedy trial before seeking dismissal "supports an inference that the defendant does not really want a trial, he wants only a dismissal." *Id.*

In this case, appellant learned of the charges against her in July 2013. Appellant could not have sought a speedy trial diligently before this date because she was unaware of the pending charges. *See Wei*, 447 S.W.3d at 555. On the other hand, appellant did not file her motion to quash or dismiss alleging a speedy trial violation until October 2013.[2] During this time, appellant's counsel signed four case reset forms and filed one motion for continuance. There is no indication in the record that appellant asked for a speedy trial before filing her motion. We therefore conclude that this factor carries only minimal weight in establishing a violation of the speedy trial right.[3]

---

[2] *See White v. State*, No. 04-10-00412-CR, 2011 WL 2893107, at *3 (Tex. App.—San Antonio July 20, 2011, no pet.) (mem. op., not designated for publication) (focusing on whether appellant diligently asserted right to speedy trial after becoming aware of charges); *State v. Pyburn*, No. 03-02-00269-CR, 2002 WL 31026832, at *3 (Tex. App.—Austin Sept. 12, 2002, pet. ref'd) (not designated for publication) (same); *Mitchell v. State*, No. 05-93-01946-CR, 1995 WL 437188, at *1, *3 (Tex. App.—Dallas July 20, 1995, no pet.) (not designated for publication) (same).

[3] *See White*, 2011 WL 2893107, at *3.

### 4. Appellant did not make a prima facie showing of prejudice.

We evaluate prejudice in light of the interests that the speedy-trial right was designed to protect: (1) minimizing anxiety and concern of the accused, (2) preventing oppressive pretrial incarceration, and (3) limiting the possibility that the defense will be impaired. *State v. Munoz,* 991 S.W.2d 818, 826 (Tex. Crim. App. 1999). Of these interests, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*. The defendant has the burden to make some showing of prejudice, although a showing of "actual prejudice" is not required. *Id*. If the defendant makes a prima facie showing of prejudice, the burden shifts to the State to prove that the defendant suffered "no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *Id*. Furthermore, if the State fails to persuasively rebut the presumption of prejudice, the defendant is entitled to relief. *Doggett*, 505 U.S. at 658.[4]

In this case, the first two interests that the speedy trial right was designed to protect are not at issue because appellant was unaware of the pending charge. As to the third interest, appellant contends her ability to mount a defense was impaired because "the delay in informing her of the charges allowed her to lose contact with the witnesses." "Before such a contention will amount to 'some showing of prejudice,' the appellant must show [1] that the witnesses are unavailable, [2] that their testimony might be material and relevant to [her] case, and [3] that [she] has exercised due diligence in [her] attempt to find them and produce them for trial." *Harris v. State*, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973); *see also Phipps v. State*, 630 S.W.2d 942, 947 (Tex. Crim. App. 1982); *Harrison v. State*, 282 S.W.3d

---

[4] We note this is not a case in which the delay was so lengthy as to excuse appellant from the requirement of demonstrating prejudice. *Cf. Gonzales v. State*, 435 S.W.3d 801, 812–15 (Tex. Crim. App. 2014) (six years); *Wei*, 447 S.W.3d at 555 (fifty-one months).

718, 722 (Tex. App.—Amarillo 2009, no pet.).

Here, appellant did not meet any of these three elements because she offered no evidence regarding the speedy trial issue—only argument of counsel regarding matters outside the courtroom. Yet even if we consider her counsel's arguments at the pretrial hearing, appellant did not meet all of the elements required for a showing of prejudice.

The witnesses that appellant's attorney asserted were missing, Aaron Hilburn and Lorenzo Santiago, were co-defendants in connection with the case. Hilburn was the manager of Treasure Island Arcade. He pled guilty and was placed on deferred adjudication for one year beginning in June 2011. According to counsel, appellant was unable to locate Hilburn once his probation requirements were satisfied. Counsel asserted that Santiago's case was dismissed in June 2012 and he was then deported to Mexico. Appellant argues she was prejudiced by her inability to locate these two witnesses because, without the delay, she would have been able to locate and use the witnesses.

At most, these arguments show that the witnesses were unavailable. Counsel did not address the steps taken to locate the witnesses (particularly Hilburn), so appellant has not shown that she exercised due diligence in attempting to find them and produce them for trial. Moreover, appellant failed to show that the missing witnesses' testimony would have been relevant and material to her defense. Accordingly, the record does not show that appellant's ability to defend herself was prejudiced by the delay, and this factor weighs against a finding of a speedy trial violation. *See Harris*, 489 S.W.3d at 309; *Harrison*, 282 S.W.3d at 722.

### 5. *The balance of factors supports the trial court's ruling.*

Having analyzed the *Barker* factors, we conclude that, on balance, the evidence supports the trial court's ruling. Although the delay of twenty-seven months triggers a speedy-trial analysis, we conclude that the State's failure to explain its delay does not outweigh the lack of prejudice resulting from that delay. The burden of making a prima facie showing of prejudice was on appellant, and she failed to specify how she diligently attempted to locate the allegedly missing witnesses or how they would have contributed to her defense. Accordingly, we hold that appellant was not denied her right to a speedy trial, and the trial court did not err in denying appellant's motion to dismiss. We overrule appellant's third issue.

## III. Appellant was not entitled to immunity under section 47.08 of the Penal Code because she was not required to furnish evidence or testify.

In her fourth issue, appellant argues that the trial court erred when it refused her request for immunity from prosecution under section 47.08 of the Penal Code. The statute provides that individuals who are parties to gambling offenses "may be required to furnish evidence or testify about the offense." Tex. Penal Code Ann. § 47.08.[5] The statute then protects those individuals from prosecution for any offenses about which they are required to furnish evidence. *Id*. Appellant argues

---

[5] Section 47.08 of the Penal Code provides, in relevant part:

(a) A party to an offense under this chapter may be required to furnish evidence or testify about the offense.

(b) A party to an offense under this chapter may not be prosecuted for any offense about which he is required to furnish evidence or testify, and the evidence and testimony may not be used against the party in any adjudicatory proceeding except a prosecution for aggravated perjury.

(c) For purposes of this section, "adjudicatory proceeding" means a proceeding before a court or any other agency of government in which the legal rights, powers, duties, or privileges of specified parties are determined.

she was required to give incriminating testimony to Sergeant Kributr during a custodial interrogation that was not preceded by *Miranda* warnings, and that this testimony was used to prosecute her for possession of a gambling device.[6] We disagree and conclude the trial court did not err in denying appellant immunity.

Appellant has identified no authority for the proposition that a police officer's unwarned custodial interrogation can amount to a "require[ment] to furnish information" that triggers immunity under this statute, rather than the ordinary remedy of exclusion (which is not at issue in this appeal).[7] Even assuming that immunity could be triggered in such a circumstance (which we need not and do not decide), we hold that the trial court could reasonably have found that no custodial interrogation occurred here. Thus, appellant is not entitled to immunity.

On the night the Harris County Sheriff's Department raided the arcade, Sergeant Kributr conducted a recorded interview with appellant concerning the status and operations of Treasure Island Arcade. Appellant contends this interview was a custodial interrogation because Sergeant Kributr took her into a room alone, while still wearing his raid mask and gun, and asked her questions. As a result, appellant claims the statements were involuntary.

---

[6] Appellant also contends that there was a violation of her privilege against self-incrimination under the Sixth Amendment to the United States Constitution, Article I, section 10 of the Texas Constitution, and Art. 1.05 of the Texas Code of Criminal Procedure. These arguments, however, were not preserved. *See* Tex. R. App. P. 33.1(a).

[7] *Cf. Graham v. State*, 994 S.W.2d 651, 653–54 (Tex. Crim. App. 1999) (explaining that grant of immunity under Texas law is prosecutorial promise to dismiss case and requires court approval); *Bolton v. State*, 265 S.W.2d 84, 85 (Tex. Crim. App. 1954) (applying prior version of section 47.08 conferring immunity when court or prosecutor compels party to appear and testify in court regarding offense); *Carpenter v. State*, 192 S.W.2d 268, 270 (Tex. Crim. App. 1946) (holding under prior version of section 47.08 that to obtain immunity, party seeking it must has burden "to show that he was summoned as a witness and examined relative to a violation of the particular statute under which he is being prosecuted," and that the immunity is no broader than the privilege against self-incrimination).

In *Miranda v. Arizona*, the Supreme Court of the United States held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444 (1966). Texas codified these safeguards in article 38.22 of the Texas Code of Criminal Procedure. Section 3(a) of article 38.22 provides that no oral statement of an accused "made as a result of custodial interrogation" shall be admissible against him in a criminal proceeding unless an electronic recording of the statement is made, the accused is given all specified warnings, including the *Miranda* warnings, and he knowingly, intelligently, and voluntarily waives the rights set out in the warnings. Tex. Code Crim. Proc. Ann. art. 38.22 § 3(a) (West 2005).

*Miranda* warnings and article 38.22 requirements are mandatory only when there is a custodial interrogation, however. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). The meaning of "custody" is the same for purposes of both *Miranda* and article 38.22. *Id.* The State has no burden to show compliance with *Miranda* unless and until the record as a whole "clearly establishes" that the defendant's statement was the product of a custodial interrogation. *Id.*

*Miranda* defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444. A "person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Herrera*, 241 S.W.3d at 525. The subjective belief of the defendant and the subjective intent of the police are not relevant except to the extent they are objectively manifested in words or actions. *Dowthitt v. State*, 931

13

S.W.2d 244, 254 (Tex. Crim. App. 1996).

The record does not support appellant's argument that she was subjected to a custodial interrogation. At trial, Sergeant Kributr testified that he advised appellant "she was not under arrest and that she was not in handcuffs, and I asked her if she would voluntarily agree to talk to me about the game room operations." In fact, appellant herself testified that Sergeant Kributr told her she was not under arrest and could leave the interview at any time. States' Exhibit 17, the audio recording of the interview, corroborates this version of the events.[8] Furthermore, appellant was not arrested that night and left the arcade after the interview. Based on the record, we hold the trial court could reasonably have concluded that appellant was not subjected to custodial interrogation. Thus, appellant could not qualify for immunity under section 47.08 even if such immunity could be triggered by an unwarned custodial interrogation. We overrule appellant's fourth issue.

## IV. Appellant is not entitled to a new trial based on the court's failure to enforce her subpoena or allow her questions.

Finally, appellant seeks a new trial in her second issue, arguing that she was denied a fair trial on two grounds. Appellant first contends the trial court abused its discretion when it declined to enforce her subpoena for the State to produce the motherboards from the seized eight-liners. Appellant also asserts the trial court denied her compulsory process when it prohibited her from questioning a Wells Fargo bank teller about seized funds deposited into an account. We review each sub-issue in turn.

---

[8] States' Exhibit 17 is an audio recording of the interview between Sergeant Kributr and appellant. Sergeant Kributr can be heard asking appellant if she would voluntarily give a statement. Appellant is heard agreeing to give a voluntary statement concerning the operations of Treasure Island Arcade and her role as an employee.

14

**A.    The trial court did not abuse its discretion regarding the motherboards because the eight-liners had been auctioned off or destroyed before trial.**

Appellant argues that the trial court abused its discretion when it refused to enforce her subpoena for the State to produce the motherboards from the seized eight-liners.  Prior to trial, appellant claimed she wanted to use the motherboards in order to show the jury how the devices operate and to demonstrate that the "devices seized were not per se gambling devices."  The eight-liners, however, had been auctioned off or destroyed after Hilburn, the arcade's manager, was placed on deferred adjudication.  The State, therefore, no longer had possession of the eight liners.  The trial court refused to enforce appellant's subpoena.  The court explained that appellant would still be able to cross-examine Sergeant Montemayor and Deputy Burks about the missing eight-liners, and that the missing devices would go "to the weight" of the evidence.

Appellant contends that the trial court's refusal to enforce her subpoena violated her state and federal constitutional rights to compulsory process. Criminal defendants have a constitutional right to compulsory process for obtaining witnesses in their favor.  U.S. Const. amend. VI; Tex. Const. art. I, § 10. Compulsory process "is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies."  *Washington v. Texas,* 388 U.S. 14, 19 (1967).  The right to compulsory process, however, is not absolute.  Defendants are guaranteed compulsory process for obtaining witnesses whose testimony would be both material and favorable to the defense. *Coleman v. State*, 966 S.W.2d 525, 527–28 (Tex. Crim. App. 1998).

We review appellant's complaint that the trial court improperly refused to enforce her subpoena under an abuse of discretion standard.  *Torres v. State,* 424

15

S.W.3d 245, 261 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).[9] We conclude that because the motherboards were no longer in the State's possession, the trial court did not violate appellant's right to compulsory process when it refused appellant's request to compel the State to produce them. The eight-liners had been auctioned off or destroyed, and it would have been impossible for the State to produce the devices. We therefore hold the trial court did not abuse its discretion when it declined to enforce appellant's subpoena.

### B. Appellant did not preserve a compulsory process complaint regarding evidence of the disposition of the seized funds.

Appellant next contends that she was denied her right to compulsory process when the trial court barred her from questioning a Wells Fargo bank teller about the disposition of funds seized from Treasure Island Arcade. In her brief, appellant claimed the bank teller had knowledge of "what happened to the proceeds" and the information obtained from the bank teller "would have been important to the cross-examination" of Sergeant Montemayor. Appellant argues the bank teller's testimony "could have cast doubt on the entire testimony of [Sergeant] Chris Montemayor." The State does not respond to this argument in its brief.

We review "complaints concerning limitations on the right to compulsory process under an abuse-of-discretion standard." *Lawal v. State,* 368 S.W.3d 876, 886 (Tex. App.-Houston [14th Dist.] 2012, no pet.) (citing *Drew v. State,* 743 S.W.2d 207, 225 n. 11 (Tex. Crim. App.1987)). We conclude that although appellant raises a compulsory process violation claim in her brief, she nevertheless failed to preserve this issue before the trial court. Appellant may not raise a

---

[9] Appellant has not argued, either at trial or on appeal, that she is entitled to a new trial because the Due Process Clause was violated when the State destroyed exculpatory or potentially useful evidence. *Cf. State v. Vasquez*, 230 S.W.3d 744, 747–48 (Tex. App.—Houston [14th Dist.] 2007, no pet.). We therefore confine our analysis to appellant's claim regarding the court's refusal to enforce her subpoena.

16

compulsory process violation for the first time on appeal.  *See Trenor v. State,* 333 S.W.3d 799, 805 (Tex. App.-Houston [1st Dist.] 2010, no pet.).  For appellant to preserve her compulsory process complaint for appellate review, the record must show that appellant made a timely, specific request, objection, or motion to the trial court.  Tex. R. App. P. 33.1(a).

Appellant has failed to cite to the record showing where the trial court violated her compulsory process right.[10]  Furthermore, our independent search of the trial court record shows it lacks any mention by appellant of a Wells Fargo bank teller.  The first time appellant mentions the Wells Fargo bank teller is in her brief on appeal.  In a pretrial hearing, appellant did raise an issue regarding the State's compliance with her subpoena for various items, including bank records regarding the disposition of the seized funds.  The trial court addressed certain of the other items requested and then asked appellant whether there was anything else, to which appellant responded "Nothing else, your honor."  Later, during trial, the trial court sustained a relevance objection to appellant's questions of Sergeant Montemayor regarding the disposition of the seized funds.  But appellant did not respond by making an offer of proof or raising a compulsory process complaint.

For these reasons, we hold appellant did not preserve for appellate review her compulsory process complaint regarding the disposition of the seized funds. Having addressed and rejected each argument made in her third issue, we overrule appellant's third issue.

---

[10] The Texas Rules of Appellate Procedure provide, in part, that an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."  Tex. R. App. P. 38.1(i).

17

## CONCLUSION

Having overruled each of appellant's issues on appeal, we affirm the trial court's judgment.

/s/    J. Brett Busby
Justice

Panel consists of Justices Jamison, Busby, and Brown.
Publish — TEX. R. APP. P. 47.2(b).