

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-16-00232-CR

Christopher Ray **LOPEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 12, Bexar County, Texas
Trial Court No. 388503
Honorable Scott Roberts, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Marialyn Barnard, Justice
Patricia O. Alvarez, Justice
Jason Pulliam, Justice

Delivered and Filed:  December 28, 2016

AFFIRMED

Appellant Christopher R. Lopez was found guilty of driving while intoxicated and sentenced to six-months' confinement in the Bexar County Jail, suspended and probated for a term of sixteen months, and a $600.00 fine.  In his sole issue on appeal, Lopez contends the trial court erred in denying his motion to dismiss for failure to grant a speedy trial.  We affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Because much of this court's determination regarding the delay in calling Lopez's case for trial turns on the exact dates of events and filings with the trial court, a detailed description is set forth below.

On March 29, 2012, Lopez was arrested and charged with the offense of driving while intoxicated. Lopez posted bond and was released from custody. On August 12, 2012, the trial court withdrew its previous order requiring Lopez to be restricted to the use of a motor vehicle equipped with an ignition interlock device. *See* TEX. TRANSP. CODE ANN. § 521.2465(b) (West Supp. 2016) (allowing for a "restricted license that conspicuously indicates that the person is authorized to operate only a motor vehicle equipped with an ignition interlock device").

On April 25, 2013, Lopez filed several pretrial discovery motions. On June 28, 2013, Lopez filed his first motion for speedy trial. The record does not indicate whether any of the motions were ever argued or brought to the trial court's attention.

On September 25, 2013, Lopez filed an additional pretrial motion requesting the trial court order the Bexar County Medical Examiner's Office to digitally copy and produce blood testing records. The trial court signed the requested order on September 26, 2013.

A jury was selected on January 5, 2016. The following day, prior to the start of testimony, Lopez filed an amended motion to dismiss based on the State's failure to timely prosecute the case. The trial court denied the motion. On January 8, 2016, the jury found Lopez guilty of driving while intoxicated, and on January 22, 2016, the trial court assessed punishment at six-months' confinement in the Bexar County Jail, suspended and probated for a term of sixteen months, and a $600.00 fine. This appeal ensued.

**DENIAL OF SPEEDY TRIAL**

**A.       Standard of Review**

When reviewing a trial court's ruling on a speedy-trial claim, "'we apply a bifurcated standard of review: an abuse of discretion standard for the factual components and a *de novo* standard for the legal components.'"  *Cantu v. State*, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008) (quoting *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002)).  We defer to the trial court's resolution of factual issues.  *Id.*  We "defer not only to a trial [court's] resolution of disputed facts, but also to [its] right to draw inferences from those facts."  *Id.*; *Gonzales v. State*, 435 S.W.3d 801, 808–09 (Tex. Crim. App. 2014).  "In assessing the evidence at a speedy-trial hearing, the trial [court] may completely disregard a witness's testimony, based on credibility and demeanor evaluations, even if that testimony is uncontroverted."  *Cantu*, 253 S.W.3d at 282.  We view all of the evidence in the light most favorable to the trial court's ultimate ruling.  *Id.*

**B.       The *Barker* Factors**

"The Sixth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, guarantees a speedy trial to an accused."  *Gonzales*, 435 S.W.3d at 808 (citing U.S. CONST. amend. VI); *accord Barker v. Wingo*, 407 U.S. 514, 530 (1972). In addressing an alleged speedy-trial violation, Texas courts apply the factors set forth in *Barker*. *See Gonzalez*, 435 S.W.3d at 808.  These factors include "(1) the length of delay, (2) the State's reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant because of the length of delay."  *Id.* (citing *Barker*, 407 U.S. at 530).

An appellate court does not consider "evidence that was not before the trial court when it made its ruling."  *Id*. at 809.  Additionally, our review of the *Barker* factors necessarily involves both factual determinations and legal conclusions, but the balancing test as a whole is a purely

legal question that we review de novo. *Cantu*, 253 S.W.3d at 282; *Johnson v. State*, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997).

### 1. Length of Delay

The first *Barker* factor requires Lopez to make a threshold showing that the interval between accusation and trial is "presumptively prejudicial." *Cantu*, 253 S.W.3d at 281 (citing *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)); *see also Gonzalez*, 435 S.W.3d at 809 ("The length of delay is measured from the time the accused is arrested or formally accused."). The general rule is delays approaching, or exceeding, one year are sufficient to trigger the *Barker* inquiry. *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003)).

Here, the delay between charge and trial exceeded forty-five months. We, therefore, conclude Lopez's delay triggers a *Barker* inquiry and weighs heavily against the State. *See Gonzalez*, 435 S.W.3d at 809 (concluding six-year delay was presumptively prejudicial); *Dragoo*, 96 S.W.3d at 314 (holding three-and-a-half-year delay between arrest and trial weighed heavily in favor of a finding of a violation of the right to a speedy trial).

### 2. State's Reason for the Delay

The State has the initial burden of justifying a lengthy delay. *Wells v. State*, 319 S.W.3d 82, 88 (Tex. App.—San Antonio 2010, pet. ref'd) (citing *Emery v. State*, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994)).

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Gonzales*, 435 S.W.3d at 809–10 (quoting *Zamorano*, 84 S.W.3d at 649). Delay caused by either the defendant or his counsel weighs against the defendant. *Wells*, 319 S.W.3d at 88–89. "In the

absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay." *Dragoo*, 96 S.W.3d at 314.

The record is relatively silent on this issue. A review of the trial court's docket sheet indicates the case was reset for jury trial at least twelve times. Of those resets, on three occasions—November 8, 2012, May 7, 2013, and May 27, 2015—the docket sheet indicates the trial court was in trial and the matter was reset. The State concedes this point weighs against the State.

On one occasion, September 24, 2013, Lopez's counsel was in a different trial and the matter was reset for February 22, 2014. On September 1, 2015, the docket sheet indicates that the matter was set for trial and Lopez failed to appear. Lopez blames this incident on a miscommunication and he turned himself in to the trial court. The matter was reset for trial on January 5, 2016.

Here, the trial court could have disbelieved Lopez's assertion that his failure to appear in September of 2015 was due to a miscommunication and not his lack of wanting to attend trial. *See Cantu*, 253 S.W.3d 282. We conclude both of these incidents weigh against Lopez. *See Wells*, 319 S.W.3d at 88.

We further note that the docket sheet does not suggest the State ever announced not ready or that the State ever sought a continuance. During the hearing on the motion to dismiss, the trial court specifically found, "none of these resets were due to the State's failure to be ready for court, ready for trial."

Based on the state of the record, we conclude this factor does not weigh in favor of either the State or Lopez.

### 3. *Lopez's Assertion of his Right to a Speedy Trial*

Whether and how Lopez asserted his right to a speedy trial is entitled to strong evidentiary weight in determining whether he was deprived of that right. *See Gonzales*, 435 S.W.3d at 810–11. A defendant's failure to assert his speedy trial right does not amount to a waiver of that right; however, the failure to assert his speedy trial right "'make[s] it difficult for a defendant to prove he was denied a speedy trial.'" *Dragoo*, 96 S.W.3d at 314 (alteration in original) (quoting *Barker*, 407 U.S. at 532). The longer the delay becomes, "'the more likely a defendant who wished a speedy trial would be to take some action to obtain it. Thus inaction weighs more heavily against a violation the longer the delay becomes.'" *Id.* (quoting G. DIX & R. DAWSON, TEXAS CRIMINAL PRACTICE AND PROCEDURE § 23.40 (2d ed. 2001)).

Here, Lopez filed his first speedy trial motion on June 28, 2013. *See Huff v. State*, 467 S.W.3d 11, 30 (Tex. App.—San Antonio 2015, pet. ref'd) (concluding Huff's almost one-year delay in seeking speedy trial was evidence that he "did not really want a speedy trial and that he was not prejudiced by the lack of one"). The following setting, on September 24, 2013, Lopez's counsel was in trial in another courtroom. Two days later, on September 26, 2013, the trial court granted a request for "standard discovery order." There is no mention of the motion for speedy trial or a request that the motion be reset before the trial court. We conclude this evidence indicates Lopez did not really want a speedy trial and therefore weighs heavily in favor of the State. *See id.*

The record further supports that the first time the trial court was apprised of Lopez's request for a speedy trial was on January 6, 2016. This amended motion was filed as a motion to dismiss. The *Cantu* Court specifically addressed a defendant's filing of a motion to dismiss, as opposed to a motion for speedy trial.

> Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one. If a

> defendant fails to first seek a speedy trial before seeking dismissal of the charges, he should provide cogent reasons for this failure.

*Cantu*, 253 S.W.3d at 283 (footnote omitted); *Ortega v. State*, 472 S.W.3d 779, 786 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The trial court denied the motion, and trial began that same day.

We cannot say the record evidences Lopez wanted or desired a speedy trial. *See Cantu*, 253 S.W.3d at 283; *see also Dragoo*, 96 S.W.3d at 314; *Huff*, 467 S.W.3d at 30. We agree with the State's assertion that Lopez's filing of the motion to dismiss, the day after the jury was selected, evidences his objective was to avoid trial, and not to receive a speedy trial. *See Cantu*, 253 S.W.3d at 283.

This factor weighs heavily against Lopez and in favor of the State.

### 4. *Prejudice to Lopez Due to the Length of Delay*

Our analysis of prejudice to Lopez considers the three interests that the Speedy Trial Clause was designed to protect: (1) preventing oppressive pretrial incarceration, (2) minimizing the anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *See Gonzales*, 435 S.W.3d at 812. "The last interest is the most important because the fairness of the entire criminal-justice system is distorted when a defendant is unable to adequately prepare his defense." *Id*. "[A] defendant has the burden to make some showing of prejudice although a showing of actual prejudice is not required." *State v. Munoz*, 991 S.W.2d 818, 826 (Tex. Crim. App. 1999) (internal quotation marks omitted). "[E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or identify." *Shaw v. State*, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003). We presume that the lengthy delay here adversely affected Lopez's ability to defend himself. *See id*.

The record supports that Lopez was released on bond shortly after his arrest. We, thus, conclude Lopez was not subjected to oppressive pretrial incarceration. *Gonzales*, 435 S.W.3d at 812. A little over four months later, the trial court withdrew its previous order requiring Lopez to be restricted to the use of a motor vehicle equipped with an ignition interlock device. During the hearing on the motion to dismiss, Lopez asserted that this case "weigh[ed] on his mind" and that he was nervous before each trial setting. The evidence does not support a conclusion that the delay caused excessive anxiety; moreover, the trial court's actions in removing the restrictions suggests the trial court showed concern for the accused. *See id.*

As for the final factor, impairment of the defense, Lopez testified the delay resulted in his losing track of a witness, a fellow employee named Pedro. He could not, however, provide the trial court with any identifying information for the witness—not his last name, no last known address, and no last known phone number. On cross-examination, Lopez conceded that he never knew this information. At no point did Lopez's counsel request a reset to find Pedro or request assistance from the State or the trial court in locating the witness.

Lopez also asserted that the length of time inhibited his ability to remember the event in great detail. Lopez was represented shortly after his arrest. There is no indication that notes were lost or destroyed due to the amount of time between arrest and trial.

On the question of deciding Lopez's motion to dismiss for lack of a speedy trial, the trial court was the exclusive judge of the credibility of the witnesses and the weight to be given to testimony, and we must defer to its determinations. *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *Hines v. State*, 383 S.W.3d 615, 623 (Tex. App.—San Antonio 2012, pet. ref'd). Here, the trial court was free to believe or disbelieve Lopez's testimony. Lopez's failure to bring any objection with the multiple trial resets is further evidence that he did not perceive the delay as prejudicial. *See Cantu*, 253 S.W.3d at 283. To the contrary, the trial court could have

concluded that Lopez's failure to appear on September 1, 2015, was evidence that his pending court date was not of utmost importance.

### E.      Balancing of the Barker Factors

"[C]ourts must apply the *Barker* balancing test with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Id.* at 281.  Although review of the *Barker* factors involves fact determinations and legal conclusions, the balancing test as a whole is a purely legal question.  *Id.* at 282.

Weighing in favor of finding a violation of Lopez's speedy trial right are the facts that the delay was excessive and that Lopez offered *some* evidence of prejudice resulting from the delay.  Weighing heavily against finding a violation is Lopez's failure to assert his motion for speedy trial, and instead to file a motion to dismiss after the jury was selected.  *Shaw*, 117 S.W.3d at 890–91.  Additionally, although Lopez asserted he was prejudiced, the record does not support the same.  We, therefore, conclude that the balance of the four *Barker* factors weighs against finding a violation of Lopez's right to a speedy trial.

Accordingly, the trial court did not err in denying Lopez's motion to dismiss and we overrule Lopez's sole issue on appeal.

Patricia O. Alvarez, Justice

DO NOT PUBLISH