

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-25-00362-CR

---

**CLIFFORD EDDIE JOHNSON, JR., APPELLANT**

V.

**THE STATE OF TEXAS, APPELLEE**

---

On Appeal from the Criminal District Court No. 2
Tarrant County, Texas[1]
Trial Court No. 1745955, Honorable Wayne Francis Salvant, Presiding

---

June 8, 2026

## MEMORANDUM OPINION

Before PARKER, C.J., and YARBROUGH and PRATT, JJ.

Appellant Clifford Eddie Johnson, Jr. appeals from his convictions for two counts of aggravated assault with a deadly weapon.[2] By his two issues, he challenges his convictions by arguing: (1) the trial court erred by denying his motion to dismiss for

---

[1] Because this cause was transferred from the Second Court of Appeals, we apply its precedent when it conflicts with that of the Seventh Court of Appeals. *See* TEX. R. APP. P. 41.3.

[2] *See* TEX. PENAL CODE § 22.02(a)(2).

violation of his right to a speedy trial and (2) the trial court erroneously admitted evidence of extraneous offenses. We affirm.

## BACKGROUND

Appellant and Caitlyn Cobb were in a romantic relationship and had a child together. On August 20, 2022, they traveled from Lubbock to Fort Worth to celebrate Cobb's birthday. En route to meeting up with some friends, their vehicle experienced tire trouble, leaving them stranded on the shoulder of Interstate 35W at approximately 1:00 a.m. While Cobb searched for her tire lock, Appellant used Cobb's phone to obtain a rideshare. As he attempted to do so, he noticed a social media post by Cobb that he interpreted as Cobb giving her telephone number to another man.

Presumedly enraged by the post, he charged Cobb and shoved her over a concrete barrier along the highway. He continued to hit and stomp on her as she lay on the ground, attempting to shield her face and head. A late-night cookie delivery driver, Meckayla Ramirez, who observed this altercation, called 911 and stopped to assist. Believing Ramirez to be the rideshare, Cobb collected her scattered belongings, ran toward Ramirez's vehicle, and got in the back seat. When Ramirez observed Appellant holding a gun, she sped away from the scene, exclaiming "He has a gun! He has a gun!" Four gunshots and the women's reactions can be heard on the audio recording of the 911 call. Later inspection of the vehicle would reveal that at least two bullets struck the car.

Appellant was indicted on two counts of aggravated assault with a deadly weapon in connection with discharging his firearm against Cobb and Ramirez at the scene of Appellant's and Cobb's initial altercation. The Tarrant County jury found Appellant guilty

2

of both counts and sentenced him to forty-five years' imprisonment for each count, running concurrently.

## ANALYSIS

### Issue One—Right to a Speedy Trial

In his first issue, Appellant complains that he was denied his right to a speedy trial. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10, TEX. CODE CRIM. PROC. art. 1.05.; *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003). He asserts the trial court erred by denying his motion to dismiss for violation of his right to a speedy trial. We disagree.

In determining whether an accused has been denied his right to a speedy trial, we employ a balancing test "in which the conduct of both the prosecution and the defendant are weighed." *Dragoo*, 96 S.W.3d at 313 (quoting *Barker v. Wingo*, 407 U.S. 514, 530, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972)). We consider the following factors in our analysis: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant resulting from the delay. *Id.* "In reviewing the trial court's ruling on appellant's federal constitutional speedy trial claim, we apply a bifurcated standard of review: an abuse of discretion standard for the factual components, and a de novo standard for the legal components." *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002); *Fuller v. State*, 624 S.W.3d 855, 863 (Tex. App.—Fort Worth 2021, pet. ref'd).

3

*A. Length of Delay*

We first measure the length of delay. The right to a speedy trial attaches at the time of arrest or formal accusation, whichever occurs first. *See Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008) (observing that right attaches when a person becomes an "accused"). We then evaluate the delay between attachment of the right and either decision on the motion for speedy trial or commencement of trial. *See id.* at 313–14. Generally, a delay approaching one year will trigger enquiry into the remaining *Barker* factors.

Here, Appellant was originally arrested on August 21, 2022. He was formally indicted on November 7, 2022. He filed his motion for speedy trial on September 10, 2025, which was heard and denied on September 25, 2025. The three-year delay between August 21, 2022,[3] and the denial of his motion for speedy trial is sufficient to warrant consideration of the remaining *Barker* factors and weighs in favor of Appellant's contention that he was denied a speedy trial. *See Fuller*, 624 S.W.3d at 864.

*B. Reason for Delay*

Our evaluation of this second factor uses a sliding scale by which we assign different weights to different reasons for the delay. *Fuller*, 624 S.W.3d at 864 (citing *Barker*, 407 U.S. at 531).

---

[3] Following his initial arrest, Appellant was released on bond, but he failed to appear, forcing an additional arrest date. In the interest of justice, we have considered the length of delay using the greatest possible time span. *See, e.g., State v. Davis*, 549 S.W.3d 688, 698 n.1 (Tex. App.—Austin 2017, no pet.).

The record before us establishes that sixteen months of the thirty-seven-month delay is attributable, at least in part, to Appellant's conflict with his original appointed counsel, appointed on August 21, 2022. Indeed, Appellant filed his declaration of conflict with appointed counsel and motion seeking appointment of substitute counsel in December 2023.[4] The trial court granted appointed counsel's motion to withdraw about one month later. Newly appointed counsel appeared on January 22, 2024, and the trial court granted Appellant a reset on February 24, 2024. Effectively, the conflict and resulting withdrawal of counsel set the case back to the very beginning with new counsel. Though possibly warranted and within his rights to seek, the appointment of new counsel affected a significant portion of the delay. *See Harper v. State*, 567 S.W.3d 450, 460 (Tex. App.—Fort Worth 2019, no pet.) (concluding that delays associated with appellant's seeking several changes of counsel were attributable to appellant in speedy-trial analysis); *Porter v. State*, 540 S.W.3d 178, 182 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (observing that appellant's conflicts with counsel and resulting three appointments of counsel caused "much of the delay").

Additionally, when this case began, Texas courts were still operating under years of COVID emergency orders. *In re Fifty-Seventh Emergency Order Regarding the COVID-19 State of Disaster*, 683 S.W.3d 776 (2022). Tarrant County's backlog was

---

[4] At the same time, Appellant filed pro se motions invoking his right to a speedy trial. While we acknowledge that Appellant's motions could be seen as an assertion of such right, nothing in the record suggests that (1) those motions were presented to the trial court such that it could be said that the trial court was aware of the assertion, and (2) Appellant unambiguously asserted his right to a speedy trial. When he filed the motions, Appellant was represented by his original counsel. Even if it were clear from the record the trial court was aware of the motions, it had no duty to consider and act on those motions. There is no right to represent oneself in part, while also being represented by counsel; there is no general right to hybrid representation in Texas. *Schindley v. State*, 326 S.W.3d 227, 230 (Tex. App.—Texarkana 2010, no pet.) (citing *Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007)).

5

considerable, seemingly prompting the creation of an auxiliary court system. The record suggests that this case was transferred to that auxiliary court, which was thereafter dissolved. Thus, this case had to be transferred back to the Criminal District Court No. 2, causing additional delay. Texas courts have acknowledged the delays and administrative frustrations associated with the COVID pandemic. *See Laird v. State*, 691 S.W.3d 30, 40 (Tex. App.—Austin 2023, pet. ref'd). Though it does not supersede constitutional mandate, a "declaration of a state of disaster may [and did] impact the judiciary and its disposition of cases pending before it." *Flowers v. State*, No. 07-21-00276-CR, 2022 Tex. App. LEXIS 5193, at *4 (Tex. App.—Amarillo July 26, 2022, pet. ref'd). To the extent that the pandemic and related court closures weigh against the State, they do so but slightly. *Laird*, 691 S.W.3d at 40; *accord Lovelace v. State*, 654 S.W.3d 42, 49 (Tex. App.—Amarillo 2022, no pet.).

Further, during the pendency of the case, the originally presiding judge of the trial court retired, and the current judge was elected to take his place. Courts generally consider such a delay as also more neutral in nature, weighing only slightly against the State. *See Ussery v. State*, 596 S.W.3d 277, 286 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd); *Emery v. State*, No. 07-07-0238-CR, 2008 Tex. App. LEXIS 1865, at *2 (Tex. App.—Amarillo Mar. 12, 2008, no pet.) (mem. op.); *see also Dickey v. Florida*, 398 U.S. 30, 38, 90 S. Ct. 1564, 26 L. Ed. 2d 26 (1970) ("Crowded dockets, the lack of judges or lawyers, and other factors no doubt make some delays inevitable."). "A more neutral reason [for the delay] such as negligence or overcrowded courts should be weighted less heavily [than should a deliberate attempt to delay] but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government

6

rather than with the defendant." *Gonzales v. State*, 435 S.W.3d 801, 809 (Tex. Crim. App. 2014). The weight we assign to these reasons is less substantial given the neutral, nigh-inevitable delays when dealing with such developments.

Overall, a significant portion of the delay here is attributable to Appellant's relationship with his first appointed counsel and his affirmative efforts in seeking appointment of new counsel. Such reasons weigh against a finding that Appellant's right to a speedy trial was violated. However, we attribute some of the delay to the State in that the backlog in cases, administrative handling, and judicial transition, while more neutral in nature, are rightly assigned to the government, but only slightly. On balance, the reasons for the delay weigh against Appellant's speedy-trial claim.

### C. Assertion of Right to Speedy Trial

Although the defendant has no duty to bring himself to trial, he does have a responsibility to assert his right to a speedy trial. *Harrison v. State*, 282 S.W.3d 718, 721 (Tex. App.—Amarillo 2009, no pet.) (citing *Cantu*, 253 S.W.3d at 282).

As we previously noted, Appellant filed pro se motions in December 2023 (seeking a trial be set and the case dismissed) and in August 2025 (seeking only dismissal) in which he invoked the Sixth Amendment right to a speedy trial. We credit these only slightly in favor of his claim, if at all, given that (1) the record fails to show the motions were presented to the trial court and (2) he was represented by counsel at the time and had no right to hybrid representation. *See supra* note 4.

Aside from the pro se filings asserting his right to a speedy trial, his second appointed counsel filed his Motion to Dismiss for Speedy Trial Violation on September

7

10, 2025, months after trial had been set for October 27, 2025. The motion was heard and denied on September 25, 2025. Notably, in this motion, Appellant sought only dismissal of a cause that was set to go to trial in approximately one month, a request which weighs against his assertion. *See Harrison v. State*, 282 S.W.3d 718, 721 (Tex. App.—Amarillo 2009, no pet.) (citing *Cantu*, 253 S.W.3d at 283, in support of proposition that "filing for a dismissal before seeking a speedy trial generally weakens a speedy-trial claim because it indicates a desire to have no trial instead of a speedy one"); *see also Cain v. State*, 747 S.W.2d 514, 518 (Tex. App.—Fort Worth 1988, no pet.) (citing *Phillips v. State*, 650 S.W.2d 396, 401 (Tex. Crim. App. [Panel Op.] 1983), for observation that a defendant's motivation in asking for dismissal rather than prompt trial is relevant and may sometimes diminish the strength of his claim).

Considering only the motion filed in September 2025 by counsel, we assign negligible weight to his motion as it relates to his assertion of his right to a speedy trial. Similarly, to the extent Appellant's pro se motions filed in December 2023 and August 2025 could have been considered by the trial court, their value likewise lends only minimal weight to a finding of a speedy-trial violation.

### D. Prejudice from Delay

Reviewing courts assess prejudice in light of the interests the right to a speedy trial was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532.

At the hearing on Appellant's motion to dismiss, counsel explained that Appellant's continued incarceration was oppressive in that he was also incarcerated on a parole violation warrant, which, per defense counsel, prevented him from making bond. However, as the State argued, Appellant would likely be incarcerated on his parole violation regardless of the promptness of trial on the pending charges of aggravated assault. While we decline the State's invitation to conclude, contrary to *Purgason v. State*, 405 S.W.3d 171, 180 (Tex. App.—Amarillo 2013, pet. ref'd), that this fact weighs against Appellant's speedy-trial claim, we likewise refuse to treat it as weighing in Appellant's favor in terms of oppressive incarceration.[5]

As another form of prejudice, Appellant also cites to his anxiety leading up to trial because of his "extensive incarceration." Evidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation. *Sample v. State*, 653 S.W.3d 287, 292 (Tex. App.—Austin 2022, pet. ref'd) (citing *Cantu*, 253 S.W.3d at 286). Appellant proffered no proof that his anxiety and concern exceeded what would ordinarily flow from serious criminal charges.

Most critical to our analysis, Appellant failed to show that the delay impaired his ability to defend himself, and he does not argue on appeal that his defense was hampered. *See Balderas v. State*, 517 S.W.3d 756, 772 (Tex. Crim. App. 2016) (noting that, of three considerations in prejudice determination, "the most important" is "limiting

---

[5] Our research yields no case from the Fort Worth Court of Appeals that directly speaks to the State's position on the significance, if any, of a defendant being incarcerated for a reason apart from pending charges, such as a parole violation, during the period of delay in a speedy-trial analysis. That being so, we will abide by *Purgason*'s rejection of the position.

the possibility that the defense will be impaired"). Here, the witnesses to the events were available and did not testify to having any memory loss of the events of August 20, 2022. Further, other evidence, such as Ramirez's 911 call and unfired ammunition, remains unaffected by the delay. Appellant proffered no evidence that the delay prejudiced his defense, and nothing in the record before us establishes prejudice under this final prong of the *Barker* test. We weigh this factor against Appellant's claim.

Thus, having considered the factors relevant to a claimed violation of the right to a speedy trial, we conclude that the trial court did not err in finding that Appellant's right to a speedy trial was not violated and accordingly, in denying Appellant's *Motion to Dismiss for Speedy Trial Violation*. We overrule Appellant's first issue.

## Issue Two—Admission of Extraneous Offense Evidence

In his second issue, Appellant complains of the trial court's admission of evidence of extraneous offenses, namely three prior physical assaults against Cobb. Again, the indictment alleges aggravated assault against both Cobb and Ramirez. The charge associated with Cobb included the additional allegation of family violence.[6] He asserts the trial court erred in its admission of this evidence of extraneous offenses under Rule 403. We disagree.

---

[6] Under the Texas Code of Criminal Procedure, a trial court must enter an affirmative finding of family violence in its judgment if, in the trial of an offense against a person, the court determines that the offense involved family violence as defined by the family code. *See* TEX. CODE CRIM. PROC. art. 42.013; *Thomas v. State*, 150 S.W.3d 887, 888 (Tex. App.—Dallas 2004, pet. ref'd). Included in the statutory definition of family violence is an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, or assault. *See* TEX. FAM. CODE § 71.004(1). The statutory definition of "family" includes individuals who are the biological parents of the same child, without regard to marriage. *See id.* § 71.003; *Thomas*, 150 S.W.3d at 888.

In a hearing and witness examination outside the presence of the jury, the trial court considered the State's evidence of extraneous offenses. Defense counsel objected based on Rule 403 and requested the trial court to give a limiting instruction should the evidence be admitted. Ultimately, the trial court determined that the evidence detailing prior assaults by Appellant against Cobb was admissible under article 38.371. *See* TEX. CODE CRIM. PROC. art. 38.371. Article 38.371 expressly allows "evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense . . . including testimony or evidence regarding the nature of the relationship" between the accused and the complainant. *Id.* art. 38.371(b), (c); *James v. State*, 623 S.W.3d 533, 545–46 (Tex. App.—Fort Worth 2021, no pet.).

During trial and before Cobb's testimony regarding Appellant's three prior assaults against her, the trial court issued a limiting instruction:

> You are further charged that if there is any evidence before you in this case tending to show that the defendant committed a crime, wrong, or act other than the offense alleged in the indictment, you cannot consider said evidence for any purpose unless you first find and believe beyond a reasonable doubt that the defendant committed said crime, wrong, or act, if any.

> If you find and believe beyond a reasonable doubt that the defendant committed the crime, wrong, or act, you may then consider the same in determining the purpose for which it was introduced, namely the nature of the relationship of the parties, and for no other purpose.[7]

Appellant maintains that, even if Rule 404(b) and article 38.371 operate to permit admission of the evidence, the trial court still abused its discretion nonetheless because

---

[7] The trial court issued similar instructions in its charge to the jury.

11

such evidence's "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403; *see James*, 623 S.W.3d at 546. Therefore, we specifically address his Rule 403 challenge to the evidence.

Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence is more probative than prejudicial. *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g). It is the burden of the party opposing the admission of the evidence to overcome this presumption by showing that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or by the other dangers listed in Rule 403. *James*, 623 S.W.3d at 547.

When considering if evidence is admissible over a Rule 403 objection, the trial court must conduct a balancing test. *Id.* (citing *Montgomery*, 810 S.W.2d at 389). In conducting the balancing test, a court must consider (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence and balance those factors against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency that a jury that has not been equipped to evaluate the probative force of the evidence would give it undue weight, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006); *James*, 623 S.W.3d at 547. We review the trial court's admission of evidence for an abuse of discretion, which the record will support only when the ruling falls outside

the zone of reasonable disagreement. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016); *James*, 623 S.W.3d at 541.

## A. *Probative Force of Evidence and the State's Need for It*

Because no evidence was presented before trial or to the jury that would allow a factfinder to infer that the extraneous offenses happened chronologically near to the offense for which Appellant was being tried, Appellant contends that the probative value of the extraneous-offense evidence was limited. To support this position, he cites to *Kiser v. State*, 893 S.W.2d 277, 281 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd). The chronological proximity between the extraneous offense and the charged offense is more relevant to the analysis of probative value apart from character conformity under Rule 404(b). *Kiser* addresses that very consideration in connection with its Rule 404(b) analysis, and a similar stance could undermine the probative value in a Rule 403 analysis.

However, it does not do so on our facts. Here, the extraneous offense evidence was relevant to depict the charged offense as being a part of a pattern—an escalation, even—of physical abuse by Appellant, illuminating the assaultive nature of the relationship over time. And for that purpose, a permissible one pursuant to article 38.371, the evidence held probative value.

Appellant also challenges the State's need for the extraneous-offense evidence, maintaining that the jury could have decided the case based solely on other admissible evidence, including the testimony of both Cobb and Ramirez. In essence, per Appellant's argument, the State had "other compelling or undisputed evidence to establish" what the

13

extraneous-offense evidence "goes to prove." *Gigliobianco*, 210 S.W.3d at 641; *James*, 623 S.W.3d at 547.

However, extraneous-offense evidence can be probative to rebut a defensive theory. *See Jame*s, 623 S.W.3d at 548. At trial, it appeared Appellant sought to undermine the identification of Appellant as the shooter and the memory and/or vision of Ramirez and Cobb. While Ramirez could testify to the facts underlying the charges against Appellant and physical evidence was also available to prove the underlying offense, defense counsel specifically challenged Cobb's memory of the night. He intimated that alcohol consumption may have affected her memory, emphasizing Cobb could not testify that she saw Appellant with the gun and was uncertain as to the direction in which shots were being fired. Thus, the extraneous-offense evidence, as it depicted the nature of the Appellant's relationship with Cobb, was probative to rebut the implied defensive strategy that undermined the witness accounts of Cobb and Ramirez. Evidence of the abusive nature of Appellant's relationship with Cobb made it less likely that someone else happened upon the scene and fired the shots or that the assault happened differently than how Cobb and Ramirez testified. Though the State did have other sources of evidence to prove the charged offense, the extraneous-offense evidence remained probative. We weigh the specific, probative value of the evidence in favor of its admission.

### B. Tendency to Suggest Decision on Improper Basis

Rule 403 refers to the danger of "unfair prejudice," meaning "a tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one."

14

*Gigliobianco*, 210 S.W.3d at 641. Rule 403 does not exclude evidence if it is merely prejudicial; "all evidence against a defendant is . . . designed to be prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013); *see James*, 623 S.W.3d at 549. Rule 403 is concerned not with prejudicial evidence but with evidence that is *unfairly* prejudicial. *See James*, 623 S.W.3d at 549.

Assuming *arguendo* that the trial court could have determined that Appellant's prior violence toward Cobb could suggest a decision by the jury on an improper basis, the trial court's limiting instructions minimized this risk. The trial court issued a limiting instruction before the evidence was admitted and again in the jury charge. We presume that the jury followed the trial court's limiting instruction. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). Nothing in the record before us suggests otherwise, and Appellant does not contend otherwise. *See James*, 623 S.W.3d at 549; *see also Baxter v. State*, No. 02-22-00258-CR, 2023 Tex. App. LEXIS 8944, at *31 (Tex. App.—Fort Worth Nov. 30, 2023, pet. ref'd) (noting that appellant bears burden to rebut the presumption that jury followed instruction and concluding, in that case, appellant "has not pointed to any evidence that demonstrates that the jury failed to follow the trial court's limiting instruction"). We weigh this consideration in favor of admission of the evidence.

## C. *Tendency to Confuse or Mislead*

As to this element, we consider the evidence's tendency to confuse or distract the jury from the main issues in the case. *See Gigliobianco*, 210 S.W.3d at 641.

Evidence of Appellant's three assaults of Cobb prior to August 20, 2022, would not appear to be easily confused with the events of that night. One of the assaults involved

Appellant and Cobb inside a bar. Appellant slapped Cobb when she said something that angered him. The second assault involved Appellant throwing a breast milk pump at Cobb, resulting in a cut to her head and several stiches. The third assault involved Appellant striking and threatening Cobb in their home when he was unable to locate his keys and wallet.

While these acts are still relevant to the nature of the couple's relationship, the place, time, and players involved in these prior assaults distinguish them from the one before us. Here, the assault involved a firearm, occurred in a different city, and included a well-intentioned stranger who stopped to help. With these distinct facts, it is unlikely that the jury would confuse the main issue before it—whether Appellant shot four times at Ramirez's car with the two women inside it—with the prior assaults against Cobb individually. We weigh this consideration in favor of admission of the evidence.

### D. Undue Delay or Needless Repetition

The final factor concerns Rule 403's "fifth and sixth key phrases, 'undue delay' and 'needless presentation of cumulative evidence.'" *See Gigliobianco*, 210 S.W.3d at 641. This factor focuses on how efficient the trial is, not on the risk of an erroneous verdict. *Id*.

Here, the evidence of the extraneous offense was relatively brief, primarily comprised of testimony from Cobb. She did not elaborate upon the details of the prior offenses, and she only testified to the basic facts such that the jury could distinguish the prior assaults from the charged offense. In the record, Cobb's testimony on the prior assaults took less than three pages of testimony; the entire trial resulted in over three hundred pages. Over the course of a day and a half of trial, the extraneous offenses were

16

not given an inordinate amount of time or attention at trial.  *See Stone v. State*, 635 S.W.3d 763, 773 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd).  We also weigh this factor in favor of admitting evidence of the prior assaults.

In light of the relevant considerations in the Rule 403 balancing test, we conclude that the trial court did not abuse its discretion by admitting the extraneous-offense evidence.  That said, we overrule Appellant's second and final issue.

## CONCLUSION

Having overruled Appellant's two issues on appeal, we affirm the trial court's judgments of conviction.

Laura A. W. Pratt
Justice

Do not publish.

17